STATE of Tennessee

v.

James Frank ELKINS, Jr.

Supreme Court of Tennessee,
at Nashville.

Aug. 28, 2002.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, James Frank Elkins, Jr.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Elizabeth T. Ryan, Assistant Attorney General; T. Michael Bottoms, District Attorney General; and Richard Dunavant, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

FRANK F. DROWOTA, III, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER and WILLIAM M. BARKER, JJ., joined.

The dispositive issue in this appeal is whether the trial court erred in failing to instruct the jury on the lesser-included offense of child abuse. The Court of Criminal Appeals held that no instruction on child abuse was necessary because the jury was instructed as to Class B misdemeanor assault, an alternative lesser-included offense. We conclude that child abuse is not an alternative lesser-included offense, that the jury should have been instructed as to child abuse, and that the erroneous failure to instruct on this offense is not harmless beyond a reasonable doubt. Accordingly, the defendant's conviction of aggravated sexual battery is reversed, and the case is remanded for a new trial.

## Background

The proof offered by the State at trial demonstrated that in July of 1998, AJ,[1]

Linda Elkins and Jacob Elkins traveled from their home in Owosso, Michigan, to Pulaski, Tennessee, to spend part of the summer with Linda and Jacob's father, the defendant in this case, James Frank Elkins, Jr.[2] At the time of this visit, AJ was twelve, Linda was eleven, and Jacob was five years of age. The girls had been friends since early childhood, and Linda had invited AJ to come to Tennessee with her for the visit. For about a week and a half after they arrived, the children stayed in the defendant's apartment in Pulaski. Thereafter, the defendant moved to a trailer on Clear Creek Road.

AJ testified that the day after they arrived in Pulaski the defendant talked to the girls at dinner about "what sex is, what it feels like, and what he does with a girl." Not long after this conversation, the defendant wrote AJ a letter urging her to think about dating him and telling her that "age didn't matter, and that he really was starting to like her and wanted her to stay in Tennessee with him." AJ did not have the letter at trial because she said the defendant retrieved it and destroyed it after she read it. During the first two weeks of the visit, the defendant would often touch AJ's leg or lean close to her. He also tried to fondle her on more than one occasion, but she moved away from him. At other times, the defendant, saying he needed to do something in the bathroom, would come into the bathroom while AJ was bathing. Because there was no shower curtain, AJ could not conceal her nude body from the defendant's view. On another occasion the defendant would not allow AJ and Linda to sunbathe unless they did so in the nude,

---

1. Consistent with Court policy, the minor victim will be referred to by her initials. *See State v. Kissinger,* 922 S.W.2d 482, 485 n. 1 (Tenn.1996).

2. The defendant drove the children to Tennessee and planned to drive them back to Michigan in August of 1998.

saying, "well, if you are going to get a tan, why not get a full body tan?" AJ refused to comply and did not sunbathe. The defendant also allowed AJ and Linda to drink alcohol and to drive his vehicle, so long as they sat on his lap while doing so.

Although the girls initially slept in the same room, the defendant later separated them, explaining that they had misbehaved. Thereafter, AJ slept on a mattress on the floor in Jacob's bedroom. Linda slept in her father's bedroom, and the defendant and Jacob slept on a sofa bed in the living room. On July 11, between midnight and two a.m., AJ was awakened by someone lying on top of her. Believing it was Linda, AJ repeatedly said "Linda get off of me." Receiving no response, AJ tried to get up, at which point the defendant told her to "shut up." AJ tried to scream and kick him off, but the defendant put his hand over her mouth and held her down. Despite her repeated attempts to defend herself, AJ said the defendant continued to hit her and repeatedly tried to "put his penis in my vaginal area." AJ was not certain if penetration occurred, but she testified that "it hurt really bad." The defendant told AJ not to tell anyone what had happened, then he walked out of the room, took a shower, and left for work. AJ said she sustained bruises to her arms, legs, and chest as a result of the attack.

AJ admitted that she did not immediately tell anyone about the incident. She explained that she tried to forget the entire episode. AJ said that she did not tell Linda because she did not want to hurt her and because she did not think Linda would believe her. AJ testified that she called her mother using the telephone next door and obtained permission to return to Michigan early with a woman named Heather; however, the defendant refused to allow AJ to leave with Heather. During cross-examination, AJ testified that she

and Linda argued but never hit each other and that she had no bruises on her body prior to the attack. AJ admitted that she knew the defendant's ex-wife, who occasionally stopped by her home in Michigan. AJ denied testifying in Michigan in a custody battle between the defendant and his ex-wife, but stated that she went to court to care for Jacob during the hearings. AJ acknowledged that she did not tell anyone in Tennessee or Michigan about the incident until March of 1999.

Anna Whary, the defendant's friend, lived near him and allowed the defendant and the children to use her telephone because the defendant did not have a telephone. Whary testified that on one occasion, about two weeks before AJ went home on July 27, 1998, the defendant and AJ stopped by to use her telephone. Whary noticed AJ was visibly upset, so she sent the defendant out for groceries so she could talk to AJ alone. AJ showed Whary bruises on her arms, the inside of her knees, and her chest, but she would not tell Whary what caused the bruising. Whary was not overly concerned about the bruises and attributed them to AJ "being a kid." Whary testified that AJ was sometimes happy and sometimes upset and crying. Whary believed that AJ cried because she was homesick.

The day after AJ arrived at her home in Michigan, Jannette Fay Dennis, AJ's great aunt who has reared the child from the time she was two days old, testified that she walked into the bathroom while AJ was in the shower and AJ "went crazy," something she had never done before. AJ pulled the shower curtain across her body, but Dennis could see yellowing bruises across AJ's chest and asked about the cause of the bruising. AJ responded, "I think it's where Frank hit me." Hearing this, Dennis tried to contact the defendant but was unable to do so since he had no

telephone. Dennis contacted Linda's mother and told her that she intended to have the defendant arrested for hitting AJ if he showed up in Michigan. Dennis admitted she was aware that the defendant was in a custody battle with Jacob's mother and that AJ attended one of the custody hearings.[3] Dennis also testified that she first learned about this alleged sexual assault in March of 1999, at the same time she met Jacob's mother.

The authorities in Michigan contacted Investigator Michael Chapman with the Giles County Sheriff's Department in March of 1999. Chapman received a taped interview AJ had with a Michigan Department of Child Services worker. Thereafter, AJ traveled to Tennessee, spoke to Chapman, and he tried twice to convince AJ to call the defendant and elicit a confession from him. AJ refused, saying she did not want to speak to the defendant, be in the same room with him, or hear his name spoken. Thereafter, Chapman spoke to the defendant about the incident. The defendant denied the allegations and indicated that the entire incident was contrived to assist his ex-wife in the custody battle over their son. The defendant indicated that the ongoing custody battle caused him to be concerned when Linda asked to bring a friend along for her summer visit, and he had allowed AJ to accompany Linda only after Linda assured him that she would not leave him alone with AJ.

Several witnesses testified for the defense. Melody Pritchard had known the defendant for several years and had lived in an apartment next door to the defendant in Pulaski. Pritchard said she did not notice AJ being unhappy, but often saw the girls wrestling in the yard. Penny Kimmell and her brother Allan Hogue had known the defendant for several years and had seen AJ several times during her visit to Tennessee. They also never noticed AJ being upset or unhappy that summer but often saw the girls wrestling and engaging in horse play.

The defendant's daughter, Linda Elkins, also testified on his behalf. Linda and AJ had been best friends since kindergarten. Linda testified that her father did not talk to them about sex, or furnish the children alcohol, or insist that they sunbathe nude. Linda said that her father never hit AJ and that AJ did not complain about the way the defendant was treating her. While Linda admitted that AJ occasionally cried during their visit to Tennessee, Linda believed AJ cried because she was homesick. Linda said that she and AJ would often strike each other while they wrestled and played outside, and she recalled hitting AJ on the leg on one occasion. Linda insisted that she and AJ always slept together in a bedroom, while Linda's father slept on the sofa. Linda admitted that she had told Investigator Chapman that she would not do anything to hurt her father. Furthermore, Linda's testimony twice contradicted her father's tape-recorded statement[4] to Chapman. Although the defendant admitted he told Linda not to talk to Michigan authorities, Linda insisted that he had not done so. Linda also denied that the defendant told her AJ could accompany her only if Linda agreed not to leave the defendant alone with AJ. The defendant claimed to have made this statement.

At the close of the proof, the trial court, pursuant to defense counsel's request, instructed the jury on the charged offense of

---

3. The defendant has been married and divorced twice.

4. The tape was played for the jury, but it was not recorded in the trial transcript and was not included in the record on appeal.

rape of a child and the lesser-included offenses of aggravated sexual battery and Class B misdemeanor assault. Defense counsel did not request and the trial court did not instruct the jury on child abuse. Following deliberations, the jury acquitted the defendant of the charged offense of rape of a child and found him guilty of the lesser-included offense of aggravated sexual battery. Following a sentencing hearing, the trial court imposed the maximum Range I sentence of twelve years.

On appeal to the Court of Criminal Appeals, the defendant asserted that his conviction should be reversed because the trial court failed to instruct the jury on the lesser-included offense of child abuse. The defendant also asserted that the trial court erred at sentencing by allowing the victim to testify when she had remained in the courtroom during the State's proof even though the defense invoked the rule of sequestration, Tenn. R. Evid. 615. The Court of Criminal Appeals rejected these arguments and affirmed the judgment of the trial court. Thereafter, we granted the defendant's application for permission to appeal and now reverse the judgment of the Court of Criminal Appeals and remand this case for a new trial.

### Lesser-included Offense Instruction

■ In this Court, Elkins again asserts that the trial court erred in failing to instruct the jury on the lesser-included offense of child abuse. Elkins relies upon Tenn.Code Ann. § 39–15–401(d), which provides that child abuse "may be a lesser-included offense of any kind of homicide, statutory assault, or sexual offense, if the victim is a child and the evidence supports a charge under this section."

The State does not argue that child abuse is not a lesser-included offense of rape of a child. Instead the State argues that the defendant was not entitled to an instruction on both assault and child abuse because the second sentence of Tenn.Code Ann. § 39–15–401(d), provides "[i]n any case in which conduct violating this section [child abuse] also constitutes assault, the conduct may be prosecuted under this section or under § 39–13–101 [the assault statute]." Based upon this language, the State argues that assault and child abuse are alternative lesser-included offenses, that child abuse rather than assault can be charged if the victim is a child, but since the defendant requested an instruction on Class B misdemeanor assault, rather than child abuse, the trial court did not err in failing to give an instruction on the alternative offense of child abuse.

■ In *State v. Burns,* 6 S.W.3d 453, 466–67 (Tenn.1999), this Court adopted the following test that courts must apply to determine whether an offense is lesser-included:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

In addition to the lesser-included offense test outlined above, of course, an offense

can also be lesser-included if it is so designated by the legislature. *See State v. Rush,* 50 S.W.3d 424, 433 (Tenn.2001); *Burns,* 6 S.W.3d at 467 n. 12 ("We hasten to add that trial courts should also consider any offenses that presently or in the future are expressly designated lesser-included offenses."). In considering whether an instruction on a lesser-included offense is warranted, trial courts must

> determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

*Burns,* 6 S.W.3d at 469. A trial court must provide an instruction on a lesser-included offense supported by the evidence even if such an instruction is not consistent with the theory of the defense or the State, since the evidence, not the theories of the parties, controls whether an instruction is required. *State v. Allen,* 69 S.W.3d 181 (Tenn.2002).

In this case, there is no question that the trial court properly instructed the jury as to Class B misdemeanor assault. A person commits Class B misdemeanor assault who "[i]ntentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn.Code Ann. § 29–13–101(a)(3). This Court has previously held that Class B misdemeanor assault is a lesser-included offense of aggravated sexual battery. *State v. Swindle,* 30 S.W.3d 289 (Tenn. 2000). The determinative issue, therefore,

is whether the trial court also was required to instruct the jury as to the lesser-included offense of child abuse.

Tennessee Code Annotated § 39–15–401(a) defines child abuse as follows:

> Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury ... commits a Class A misdemeanor; provided, that if the abused child is six (6) years of age or less, the penalty is a Class D felony.

As previously stated, subsection (d) of section 401 further provides:

> A violation of this section may be a lesser-included offense of any kind of homicide, statutory assault, or sexual offense if the victim is a child and the evidence supports a charge under this section. In any case in which conduct violating this section also constitutes assault, the conduct may be prosecuted under this section or under § 39–13–101 [assault].

Clearly, the General Assembly has designated child abuse a lesser-included offense of any kind of "sexual offense if the victim is a child." Applying this statute, therefore, child abuse is a lesser-included offense of rape of a child, the offense with which the defendant was charged. Moreover, viewing the evidence presented at trial liberally in the light most favorable to the existence of the lesser-included offense, without making any judgments on the credibility of such evidence, we conclude that an instruction on child abuse was warranted in this case because the evidence, viewed in this light, is legally sufficient to support a conviction of child abuse. AJ testified that the defendant held her down, that she attempted to fight him off, and that she sustained bruises on her body as a result of the defendant's conduct. Two other witnesses testified to seeing the bruises. Certainly, this evi-

dence is legally sufficient to support a conviction of child abuse, which requires only proof that a person knowingly, other than by accidental means, treats a child under eighteen in such a manner as to inflict injury. Accordingly, we conclude that the trial court erred in failing to instruct the jury as to child abuse.

■ In so holding, we reject the State's assertion that the second sentence of subsection (d), which provides that conduct may be prosecuted as child abuse or as assault, obviates the need for an instruction on child abuse since the jury was instructed as to Class B misdemeanor assault. The statute addresses the subject of prosecution; it does not address the subject of jury instructions on lesser-included offenses. While the statute clearly provides that a defendant may be charged with either assault or child abuse, the statute does not provide that a trial court need only instruct on assault or child abuse. Moreover, this reading of the statute is difficult to justify given that child abuse is a Class A misdemeanor and assault, as charged in this case, is a Class B misdemeanor. Since the offenses do not subject the defendant to the same punishment, the State's argument that they are alternative lesser-included offenses is not convincing. Also militating against this argument is the fact that the elements of the offenses are not merely alternative methods of proscribing and punishing the same conduct. Class A misdemeanor child abuse requires proof that the defendant's knowing conduct inflicted injury upon a minor, while Class B misdemeanor assault requires proof that a defendant intentionally or knowingly caused extremely offensive or provocative physical contact with another person. Class B misdemeanor assault does not require proof of an injury or proof that the person is a minor. For all these reasons, we find the State's argu-

ment that the defendant was not entitled to instructions on both child abuse and assault unpersuasive and hold that the trial court erred in failing to instruct the jury as to the lesser-included offense of child abuse.

■ Having so concluded, we must next determine if the error requires reversal or if it was harmless beyond a reasonable doubt. *State v. Ely*, 48 S.W.3d 710, 727 (Tenn.2001). As stated recently in *Allen*, "[a]n erroneous failure to give a lesser-included offense instruction will result in reversal unless a reviewing court concludes beyond a reasonable doubt that the error did not affect the outcome of the trial." 69 S.W.3d at 189. In making this determination, "a reviewing court must conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." *Allen*, 69 S.W.3d at 191. The error ordinarily will be considered harmless when the jury, by finding the defendant guilty of the charged offense necessarily rejects all other lesser-included offenses. *Allen*, 69 S.W.3d at 191 (citing *State v. Williams*, 977 S.W.2d 101, 106 (Tenn.1998)).

Mindful of these principles, we first note that the defendant entirely denied the allegations against him; thus, every issue was contested. The proof was controverted and not overwhelming. Nine months passed before AJ told anyone about the alleged sexual assault. AJ's testimony that a crime occurred was contested by the defendant and the witnesses testifying on his behalf, in particular, Linda, the defendant's daughter and the victim's best friend. AJ admitted that she was uncertain whether or not penetration occurred, but she testified that the defendant repeatedly touched her, and her testimony about the bruises on her body was corroborated by two other witnesses. This testi-

mony, as previously stated, certainly could have supported a conviction for child abuse. While there is testimony in the record that AJ cried on occasion during her visit to Tennessee, there is also testimony that she was homesick and that the witnesses believed that was the reason she cried. Because of the nature of the alleged touching, there is no medical proof in the record to corroborate AJ's testimony. Finally, the jury rejected the charged offense of rape of a child and convicted the defendant of the intermediate lesser-included offense charged—aggravated sexual battery.[5] After thoroughly examining the record in this case, we are unable to conclude beyond a reasonable doubt that the omission of an instruction on child abuse did not affect the outcome of the trial. Therefore, the error was not harmless, and the defendant's conviction must be reversed and the case remanded for a new trial.

Having so concluded, we need not address the defendant's assertion that the trial court erred in allowing the victim to testify at the sentencing hearing even though she had remained in the courtroom after the defense invoked the rule of sequestration, Tenn. R. Evid. 615. Nonetheless, we note that Rule 615 does not mandate exclusion of all persons and permits counsel for a party that is not a natural person to designate a person to remain in the courtroom. The 1997 Advisory Commission Comments to Rule 615 specifically explain that this provision permits the prosecuting attorney for the State of Tennessee to designate a crime victim as the person to remain in the courtroom despite invocation of the rule of sequestration. Therefore, on remand if the prosecution so desires, it may designate AJ as a person to remain in the courtroom even if the defense again invokes Rule 615. We decline

to address the State's assertion that Article I, Section 35 of the Tennessee Constitution supersedes the rule of sequestration as it relates to victims of crime. It is well-settled that courts generally do not decide constitutional issues if the case may be properly resolved on nonconstitutional grounds. *See, State v. Hicks,* 55 S.W.3d 515 (Tenn.2001); *State v. Burdin,* 924 S.W.2d 82, 87 (Tenn.1996); *Owens v. State,* 908 S.W.2d 923, 926 (Tenn.1995).

### Conclusion

Having concluded that the trial court erred in failing to instruct the jury on the lesser-included offense of child abuse and that this error was not harmless, the defendant's conviction is reversed and the case remanded for a new trial. Costs of this appeal are taxed to the State of Tennessee, for which execution may issue if necessary.

---

5.  *See* Tenn.Code Ann. § 39–13–504.