IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 7, 2004

## RANDALL MILLS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County**
**No. 14007 / PC #15471      Charles Lee, Judge**

_____

**No. M2003-01770-CCA-R3-PC - Filed July 20, 2004**

_____

The petitioner, Randall Mills, appeals the denial of post-conviction relief. The single issue presented for review is whether the petitioner was denied the effective assistance of counsel at trial. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

N. Andy Myrick, Jr., for the appellant, Randall Mills.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee

**OPINION**

The petitioner was convicted of rape of a child, three counts of aggravated sexual battery, and one count of casual exchange. The trial court merged each of the aggravated sexual battery convictions with the child rape conviction and imposed an effective sentence of 20 years. After an appeal by the petitioner and the state, this court concluded that the three convictions for aggravated sexual battery should have been merged into one single count of aggravated sexual battery. This court also ruled that those offenses should not have been merged with the child rape offense and remanded to the trial court for reconsideration. State v. Randall Ray Mills, No. M2000-01065-CCA-R3-CD (Tenn. Crim. App., at Nashville, Oct. 17, 2001). Application for permission to appeal to the supreme court was denied on March 4, 2002. Upon remand, the trial court corrected the convictions. The effective sentence was re-established at 20 years.

The convictions were based upon an incident that occurred on the evening of March 15, 1999. According to the twelve-year-old female victim, the petitioner invited her to his residence to smoke marijuana. The victim, who described herself as "dizzy and lightheaded" as a result of the

marijuana use, contended that the petitioner rubbed her vagina through her jeans, fondled one of her breasts, and then removed her jeans and panties before performing oral sex on her vagina. According to the victim, the petitioner digitally penetrated her vagina repeatedly and ultimately penetrated her with his penis. After approximately one hour, the victim's older sister, who had been left in charge of the victim during the temporary absence of her mother, left in a vehicle to look for the victim. The petitioner, who lived next door, stopped when he heard the car start. The victim dressed and the petitioner gave her $20.00 and said, "If you tell anybody, I'm just going to deny it." The victim recalled that she fell when she left the petitioner's residence and waited on the front porch until her sister returned because the door was locked. After initially claiming to her sister that she had been in the back yard, the victim confessed that she had been with the petitioner, informed her of what had occurred, and gave her the twenty-dollar bill. Her sister loudly confronted the petitioner, threw the $20.00 at him and called the police. The authorities were unable to locate the petitioner for several days. An investigation established that there was both semen and sperm on the crotch area and waistband of the victim's panties.

On February 21, 2003, the petitioner filed a petition for post-conviction relief alleging that his constitutional rights had been violated in a number of ways. Although counsel was appointed, the lengthy post-conviction petition filed by the petitioner was not amended. At the evidentiary hearing, the petitioner withdrew claims that the composition of the jury did not meet constitutional standards and that a failure of election among offenses on the part of the state violated his rights. The petitioner insisted, however, that his trial counsel was ineffective, citing a variety of omissions, and that the state had failed to provide exculpatory evidence in advance of the trial as required by law. The petitioner expressed concern about trial counsel's failure to seek expert assistance and demand instructions on lesser included offenses.

At the evidentiary hearing, Beth Rhoton, an investigator with the Lewisburg Police Department, was called as a witness by the petitioner. Although the petitioner had hoped that Ms. Rhoton would testify that the victim had falsely claimed to be a virgin in advance of trial and that this fact was not made available to the defense, Ms. Rhoton denied having any such information. Ms. Rhoton did testify that she was in the chain of important evidence, having received the rape evidence kit from Officer Doug Alexander who was at the hospital with the victim during the examination. Although Ms. Rhoton had no recollection of having discussed her participation in the investigation with trial counsel or anyone on behalf of trial counsel, she recalled having information about the results of the DNA analysis. Ms. Rhoton testified that she had sealed the results of the rape kit when it came into her possession and that the seal remained intact before it was transferred to the TBI Crime Laboratory.

Jennifer Hastings, the older sister of the victim, CM,[1] was also called as a witness by the petitioner. Ms. Hastings testified that when she questioned the victim, the victim admitted that the petitioner had performed oral sex and digitally penetrated her vagina but denied penile penetration. She recalled that when she asked the victim whether she was sure, the victim answered, "No." Upon

---

[1] It is the policy of this court not to identify minor victims of sex crimes.

cross-examination, however, Ms. Hastings acknowledged that she was living with her boyfriend, Randy Mills, the petitioner's son, for approximately two months, their having had a romantic relationship for almost a year. She also acknowledged that on the night of the offense, she had a different boyfriend, Robert Hodge, who was spending the night with her while her mother was visiting a sick relative in Nashville. At the evidentiary hearing, Ms. Hastings claimed that the victim was untrustworthy.

The petitioner's son, Randy Mills, recalled having met with the petitioner's defense counsel prior to the trial. After claiming that his younger brother, Dale Mills, informed him that he had had sex with the victim sometime before the crime at issue, Randy Mills stated that he wanted to provide that information to trial counsel but chose not to, explaining , "I was young [and] . . . didn't know anything about that kind of stuff." Randy Mills also contended that he had actually seen his younger brother in bed with the victim prior to the crimes. Randy Mills was otherwise unable to say why he had not provided this information earlier. Upon cross-examination, however, Randy Mills admitted that he had avoided interacting with police officers before the trial, primarily because he had been in "a lot of trouble as a juvenile."

The petitioner also called the victim as a witness on his behalf. On direct examination, she testified that she had no recollection of talking with the petitioner's defense counsel before the trial and confirmed that she could not remember whether she had engaged in penile-vaginal sex with the petitioner. She explained that she had testified about having penile-vaginal sex with the petitioner only because "they found his DNA" as a result of her emergency room treatment. The victim, 16 years old at the time of the evidentiary hearing, admitted that she lived next door to her sister and her sister's boyfriend, Randy Mills.

On cross-examination by the state, the victim acknowledged that she had testified "in great detail" about her various sex acts with the petitioner and recanted much of her testimony on direct examination. She was presented with a written statement she had signed in advance of the trial:

> Ms. Rhoton came to my house Monday afternoon, and I told her the truth about Randall Mills having sex with me. I didn't tell her this before because I was scared that I would get in trouble. I thought it would make me look like a bad person. . . . Please do something to him so he can't do this to me or others again.

Upon questioning by the state, the victim conceded that she was telling the truth when she testified at trial that there was "penile penetration." Her memory was refreshed by her statement and the results of the DNA analysis. When questioned why she testified to the contrary on direct examination, she explained, "I've kept it out of my head for five years now." On redirect-examination, the following questions and answers appear in the record of the evidentiary hearing:

> Q. Let me ask you this question. You have now testified that you do remember penile penetration that night?
> A. Yes, sir.

Q. And just less than 20 minutes ago, you testified that you didn't remember that?

A. Yes, sir.

Q. Your memory has come back to you during that period?

A. I saw my own writing. Whenever I see that, I remember.

* * *

Q. Now your testimony is that penile penetration did occur, right?

A. Yes, sir.

The victim also testified that she had told her sister, Jennifer Hastings, that she had been raped by penile penetration and she further asserted that her sister, if she testified to the contrary, had been untruthful.

The petitioner, who by the time of the evidentiary hearing had served 26 months in prison, challenged the propriety of the chain of custody relating to the panties of the victim and the results of the rape kit testing. The petitioner also complained that his trial counsel had stipulated that the officers had handled the evidence in an appropriate manner. The petitioner contended that his trial counsel should have challenged the chain of evidence and that the state should have provided him with information that the victim had been having sex with his son prior to trial. The petitioner also complained that his trial counsel had met with him only on court dates, a total of nine or ten times, prior to his trial. He stated that he was "pretty sure" his trial counsel did not interview anybody and complained that there was a complete absence of preparation. The petitioner also insisted that child abuse, as defined by Tennessee Code Annotated section 39-15-401, should have been charged as a lesser included offense. The petitioner, who admitted that he had been convicted of two counts of larceny in 1977 and attempt to commit a felony in 1979, admitted that he made no complaints about his counsel's performance prior to the trial. The petitioner also acknowledged that he never asked either of his two sons to visit with his trial counsel in an effort to assist in the preparation for trial.

The petitioner's trial counsel, a member of the public defender's office, testified that his pretrial investigation had established that the state had developed a proper chain of custody in the admission of the evidence subjected to DNA testing. He specifically recalled that the petitioner had agreed to the stipulation. Trial counsel also testified that he had talked with the attorney who had represented the petitioner during the preliminary hearing stage in the general sessions court, learning that the petitioner had admitted his guilt. After trial counsel had been appointed, the petitioner again acknowledged his guilt to the charges. The petitioner admitted to his trial counsel that he had smoked marijuana with the victim, had fondled her, and had digitally penetrated her, but denied any penile penetration. He stated that it was only later, after the petitioner learned that there could be no probation in the event of a conviction, that the story changed and the petitioner alleged that it was "actually his son who had had sex with the . . . victim"; thus, it was only after learning that the charges carried between 15 and 25 years at 100% that he proclaimed his innocence. Trial counsel testified that he then questioned the son, who denied having sex with the victim, and thereafter informed the petitioner that if his son testified otherwise, he faced the possibility of a perjury charge.

-4-

It was his recollection that the petitioner, after learning of the potential jeopardy of his son, informed him that he did not want either of his sons to testify at the trial. Trial counsel estimated that he and an associate and two investigators for the public defender's office had spoken directly with the petitioner between 20 and 25 times before the trial. He testified that he had interviewed Officer Rhoton, the DNA expert utilized by the state, Officer Alexander, and the victim's mother, who refused to cooperate with an interview of the victim. Trial counsel also recalled that the DNA evidence was "somewhat confusing" and not entirely persuasive. It was his recollection that the experts had determined that one in every 290 males would have the "same type marker."

The attorney who represented the petitioner until the matter was heard in the general sessions court testified that the petitioner had admitted digital penetration but denied penile penetration. He recalled having informed trial counsel of his conversation with the petitioner.

At the conclusion of the evidentiary hearing, the trial court first accredited the testimony of Jackson Dearing, the trial counsel, and Larry Wallace, who represented the petitioner through the preliminary hearing, specifically determining that the petitioner had admitted digital penetration at the very least. It also accredited trial counsel's testimony that the petitioner had withdrawn his request to utilize either of his sons as witnesses. Next, the trial court specifically found that there was adequate investigation by the public defender's office and that the defense strategy was that the petitioner was not guilty and the victim was not a credible witness, having admitted smoking marijuana since she was 10 years old. The trial court also found that the testimony of young Randy Mills and his girlfriend, Jennifer Hastings, was untruthful for the most part and that neither witness was entitled to accreditation. It was the court's further finding that Randy Mills had failed to provide information that would have been helpful to trial counsel. It ruled that the petitioner had been unable to show any prejudice by virtue of trial counsel's failure to challenge the chain of custody and that there was no showing by the petitioner of any need for independent testing or expert assistance. Other than the charged crime, there was no indication that a lesser offense was appropriate from the evidence provided at trial. Specifically, the post-conviction court found that if the petitioner had pushed the victim to the bed, that offense would have been separate and distinct, and not lesser to the charged crimes.

In this appeal, the petitioner argues that his trial counsel failed to adequately investigate, was ineffective by stipulating the chain of custody, was ineffective for failing to ask for expert assistance regarding the DNA analysis, and was ineffective for having failed to make a special request on a lesser included offense.

In a post-conviction proceeding, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those

findings. <u>Clenny v. State</u>, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. <u>Bates v. State</u>, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. <u>Fields v. State</u>, 40 S.W.3d 450, 457-58 (Tenn. 2001); <u>see also</u> <u>State v. England</u>, 19 S.W.3d 762, 766 (Tenn. 2000).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Initially, the petitioner has failed to establish any inadequacy in preparation. Because the trial court specifically found that there was no deficiency in performance, it was the obligation of the petitioner to establish through this record that the evidence preponderated against the finding. He has failed to do so. While trial counsel was hampered by his inability to acquire permission from the victim's mother to interview either the victim or her older sister, no fault can be placed upon trial counsel for that. Members of the petitioner's family chose not to reveal some evidence that might have been of assistance. Trial counsel cannot be blamed for that. Otherwise, there is simply no evidence to substantiate the claim of lack of preparation.

As to the stipulation on a proper chain of custody, the petitioner has failed to suggest why the evidence would not have been introduced anyway. There is no indication from the record that there was any break in the chain of custody. Moreover, trial counsel determined that it was a tactical advantage to the defense to avoid any possible inference on the part of the jury that the defense intended to hide any evidence.

Next, the petitioner has complained that his trial counsel should have sought a defense expert on DNA analysis. When a complaint of that nature is made, the burden rests on the petitioner to establish how he was prejudiced by not having an expert available. Nothing in this record suggests why it was incumbent upon trial counsel to seek the assistance of an expert. Thus, the petitioner is not entitled to any relief on this claim.

Finally, the petitioner complains that the trial court should have provided instructions on simple assault or child abuse as lesser included offenses of child rape and aggravated sexual battery. The petitioner relies on State v. Elkins, 83 S.W.3d 706 (Tenn. 2002), for his claim that child abuse and neglect and assault are lesser included offenses of rape of a child. He cites State v. Swindle, 30 S.W.3d 289 (Tenn. 2000), for the proposition that simple assault is a lesser included offense of aggravated sexual battery. In Elkins, child abuse and assault were held to be lesser included offenses of rape of a child. In Swindle, a Class B misdemeanor assault was ruled a lesser included offense of aggravated sexual battery under Part (b)(2) of the Burns test.

While the state concedes that these are indeed lesser offenses, it points out that the trial in this case was on January 25, 2000, well before either of the two supreme court decisions relied upon by the petitioner. Trial counsel was aware of the holding in State v. Burns, 6 S.W.3d 153 (Tenn. 1999), which was the lead case on the issues of lesser included offenses at the time of the trial.

Because Elkins and Swindle were in the appellate pipeline at the time of the trial, it is arguable that trial counsel should have sought instructions on any possible lesser included offenses. That alone, however, would not qualify as a basis for relief. In this case, there was no evidence at all as to any assault other a sexual assault and no proof of child abuse. See Tenn. Code Ann. §§ 39-13-101(a)(3), 39-15-401(a). Here, the evidence was that the petitioner had fondled the victim's right breast with his hand, rubbed her vagina through her blue jeans, and ultimately penetrated her vagina, both digitally and penilely. Although the victim testified that each instance of penetration was painful, there was no indication of injury as defined by Tennessee Code Annotated section 39-11-106(a)(2). Similarly, the proof established child rape and aggravated sexual battery. The defense was that neither crime had occurred, not that there was a simple assault. Although the instruction may have been appropriate, if given, any error for the failure to instruct under the circumstances of this case would have been harmless beyond a reasonable doubt. State v. Richmond, 90 S.W.3d 648 (Tenn. 2002).

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE