IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 30, 2007

## STATE OF TENNESSEE v. JOHNNY BAXTER

**Appeal from the Criminal Court for McMinn County**
**No. 03-324     Carroll L. Ross, Judge**

---

**No. E2006-00669-CCA-R3-CD - Filed March 22, 2007**

---

The defendant, Johnny Baxter, was convicted by a McMinn County jury of rape of a child, a Class A felony, for which he received a sentence of twenty years in the Department of Correction. In this appeal, he argues that the evidence was insufficient to sustain the conviction, that the trial court erred in failing to instruct the jury on child abuse as a lesser included offense, and that the trial court failed to account for mitigating proof in its sentencing determination. We hold that no error exists, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Charles Richard Hughes, Jr., District Public Defender, and William Carter Donaldson, Assistant Public Defender, for the appellant, Johnny Baxter.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Steve Bebb, District Attorney General; and Richard Newman and Wylie Richardson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The defendant's conviction arises from his inappropriate conduct with a six-year-old boy whom the defendant and his wife were babysitting. At trial, the state relied on the victim's testimony and the defendant's confession. The defendant testified that he did not recall making the confession and that he had never had any unlawful contact with the victim.

Kim Marie Plemons testified that she was the victim's grandmother. She said the victim was six years old in February and March 2003. She testified that the victim and his sisters lived with her husband and her and that they had legal custody of the grandchildren. She said that the defendant's wife was her sister-in-law and that the couple had lived in a trailer on her property for four years.

She said that she was aware that the victim went to the defendant's trailer in early 2003 and that the defendant and his wife took care of the victim. She said the defendant moved out of the trailer in April 2003 "when we found out." Mrs. Plemons testified that the defendant was involved in Little League as a coach and umpire.

The defendant's wife, Regina Baxter, testified for the state. She said that she and the defendant had been separated since March or April 2003. She said that she and the defendant lived next door to Mr. and Mrs. Plemons and their grandchildren for about four years. She said that she babysat the victim at her house and that the defendant was home during the times she would babysit. She said that the victim did not mind her very well and that the defendant often assumed the duties of caring for the victim because the victim liked the defendant. She said that the defendant's and the victim's daily routine included taking a shower together. She testified that other members of her family knew about the showers but that no one objected. Mrs. Baxter testified that around March 2003, the victim became "sort of rebellious" toward the defendant.

Mrs. Baxter testified that the defendant had dropped out of the eleventh grade. She said that he was able to drive. She also said that the defendant had passed a test which allowed him to be a Little League coach and umpire.

The victim testified that he was six years old and in kindergarten when the defendant and his wife lived next door to him. He said that he used to stay at the defendant's house. He testified that the defendant told him to put his "privates" in the defendant's mouth when they were in the bathtub. He said that he complied and that "[the defendant] squirt[ed] milk out of his privates." The victim said that this happened five times during "summer vacation." The victim said that he told his Aunt Emily and his grandmother, Kim Plemons, that he and the defendant bathed together. He acknowledged that he had previously reported that there was only one incident, but he maintained in his testimony that it occurred five times.

McMinn County Sheriff's Department Detective Gary Miller testified that he interviewed the defendant in September 2003 and obtained a signed statement from him. He said he informed the defendant of his Miranda rights. In the statement, the defendant admitted that the victim stuck his penis in the defendant's mouth "for just a second or two" while they were horsing around. Detective Miller said that the defendant admitted that this occurred on one occasion in February or March 2003 and that the defendant claimed he regretted having done it. According to the statement, the defendant said that the "white stuff" the victim had reported must have been the victim seeing the defendant masturbating without the defendant realizing that the victim was watching. Detective Miller said that the defendant inquired what kind of sentence he would receive for the crime and asked whether it would interfere with his ability to coach youth baseball. On cross-examination, Detective Miller said that the defendant appeared competent to him and that he did not get the idea that the defendant was mentally retarded.

The defendant testified on his own behalf. He said that he was thirty-seven years old and had worked at various jobs most of his life until he started trying to obtain disability benefits. He said

he dropped out of school in the eleventh grade and had been in special education classes because he was a slow learner. He said he had applied for disability because of back problems and being a slow learner. He said his employment had been terminated on occasion because he could not keep up with the pace of the work.

The defendant testified that he and his wife provided childcare for the victim and his sisters. The defendant said that he considered himself a father figure to the victim and that he loved the victim like a son. He admitted bathing the victim and getting into the bathtub with the victim but denied doing anything inappropriate to the victim. He said his wife knew about his bathing with the victim, but he was unsure whether Mrs. Plemons was aware of it. He denied masturbating in the bathroom when the victim was present. The defendant testified that he remembered talking to Detective Miller but that he did not remember what he had said or signing the inculpatory statement. He said that he was scared when he talked to Detective Miller.

The defendant admitted that he had taken a written examination to become an umpire. He claimed that the need for umpires was so great that the person administering the test had given him the answers to ensure that he passed it.

The jury found the defendant guilty of rape of a child. The trial court imposed the presumptive sentence of twenty years for a Class A felony. The defendant then filed this appeal.

**I**

First, we consider the sufficiency of the evidence. Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

At the time of the offense, rape of a child was defined as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is less than thirteen (13) years of age." T.C.A. § 40-35-522 (2003) (amended in 2006 to specify a victim's age range of more than three years of age but less than thirteen years of age). The mental intent required for the offense was intent, knowledge, or recklessness. T.C.A. § 39-11-301(c).

In the light most favorable to the state, the evidence demonstrated that the defendant admitted to Detective Miller that he had engaged in a sexual act with the victim. The victim's testimony was consistent with the defendant's pretrial statement. The defendant argues on appeal that the victim's credibility was suspect because he reported that there had been both one incident and five incidents and that the defendant's statement is of questionable reliability because of his distressed and limited

mental state at the time he gave the statement. The defendant also argues that the evidence of his mental capacity demonstrates that he was unable to form the requisite intent to commit the crime. The jury had before it all of this evidence and resolved the issues of witness credibility adversely to the defendant, which was in its province as the trier of fact. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997) ("Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact."). The evidence is sufficient to support the defendant's conviction.

## II

Next, the defendant argues that the trial court erred in failing to instruct the jury on the lesser included offense of child abuse. The defendant is correct that child abuse is a lesser included offense of rape of a child. See T.C.A. § 39-15-401(d) (2003) (amended 2005); State v. Elkins, 83 S.W.3d 706 (Tenn. 2002). However, the defendant did not submit a written request for the court to charge child abuse. Absent a written request for an instruction on lesser included offenses, the failure of the trial court to instruct the jury on any lesser included offenses is not available as a ground for relief either in a motion for new trial or on appeal. T.C.A. § 40-18-110(c). Because the defendant failed to file a written request asking the trial judge to instruct the jury on the lesser included offense of child abuse, he waived this issue on appeal unless it rises to the level of plain error. See State v. Page, 184 S.W.3d 223, 226 (Tenn. 2006) (concluding that issues concerning jury instructions on lesser included offenses which were not requested in writing at the time of trial pursuant to Tennessee Code Annotated section 40-18-110(c), may still be reviewed on appeal under the plain error doctrine). Therefore, we must determine if the failure to give an instruction on child abuse rises to the level of plain error.

Rule 52(b) of the Tennessee Rules of Criminal Procedure provides:

> (b) Plain Error. – When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal.

See also T.R.A.P. 36(b). Our supreme court has adopted the factors developed by this court to be considered

> when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). In order for this court to reverse the judgment of a trial court, the error must be "of such a great magnitude that it probably changed the outcome of the [proceedings]," and "recognition should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." Adkisson, 899 S.W.2d at 642.

In the case before us, the defense employed an "all or nothing" strategy at trial, contending that nothing inappropriate occurred. Given the tactic employed, as well as the evidence, we cannot say that the defendant has shown that he did not waive the child abuse instruction as a matter of trial strategy. Moreover, we cannot say that consideration of the issue is necessary to do substantial justice. The defendant was convicted of the charged offense, rape of a child. By its verdict, the jury rejected all of the other lesser included offenses which were charged – attempted rape of a child, aggravated sexual battery, attempted aggravated sexual battery, and assault. See State v. Allen, 69 S.W.3d 181, 190 (Tenn. 2002). With the exception of assault, these lesser included offenses are intermediate offenses between rape of a child, a Class A felony, and child abuse, a Class D felony when the victim is six years of age or younger. See T.C.A. §§ 39-13-101 (Assault - Class A or B misdemeanor depending on mode of offense); 39-13-504 (Aggravated Sexual Battery - Class B felony); 39-13-522 (Rape of Child - Class A felony); 39-15-401 (Child Abuse - Class D felony if victim is six or younger); 39-12-107(a) (Attempt - classified as one grade below the classification of completed offense charged as an attempt). Given the jury's rejection of the intermediate offenses, it is not necessary for us to consider the issue in order to do substantial justice.

### III

The final issue pertains to the defendant's sentence. Before imposing the sentence, the trial court received evidence via witness testimony, the presentence report, medical and psychiatric records of the defendant, and the victim impact statement.

Jackie Plemons, the victim's grandfather, testified at the sentencing hearing that he and his wife had given the defendant and his wife a place to live in exchange for the defendant's wife's babysitting services. Mr. Plemons testified that the victim's grades had been poor and that the victim had received psychiatric treatment since the crime.

Kim Plemons testified that the victim had become distrustful of men. She said that when the defendant's name had been mentioned in front of the victim, the victim had "fallen apart." Mrs. Plemons said that she had never heard that the defendant was mentally retarded and that the defendant was not like her mentally retarded brother. She said that the defendant was able to read, write, and officiate at baseball games.

Joyce Fletcher, the preparer of the presentence report, testified that she had obtained an employment history for the defendant for 1987 to 2002 and that she had obtained the defendant's application for disability benefits, which was attached to the presentence report. She said that the

defendant had been denied benefits but that he had filed an appeal. She said that her investigation revealed that the defendant had repeated grades in school and that he had no criminal history.

Sandra Caldwell testified that she interviewed the defendant for the presentence report. She said that the defendant was able to answer her questions, although he was unable to provide specific dates and was unclear whether he was still married. Ms. Caldwell testified that the defendant told her he was not mentally disabled but that he had applied for disability because he was "slow." When asked whether she thought the defendant seemed slow, Ms. Caldwell said that her impression was that "he seemed . . . awfully cheerful to be in this position."

Freida Baxter, the defendant's mother, testified that the defendant had been a sickly child. She said that the defendant was "slow in everything he does." She said that the defendant had been terminated from a job with her husband's employer because he could not keep up with the demands of the job.

Laura Burris, who was eighteen years old, testified that she had lived with the defendant and his wife for about three years and that nothing inappropriate ever happened to her in their home. She said that the victim always liked the defendant, but she admitted on cross-examination that at the time of the crime she was not living with the defendant and his wife because she had been sent to reform school for not attending her regular school.

The trial court found that the defendant committed the offense to gratify his desire for pleasure or excitement and that the defendant had abused a position of private trust in committing the offense. See T.C.A. § 40-35-114(8), (16) (2003) (amended 2005). The court weighted the latter more heavily than the former. The court declined to find that the defendant's culpability for the offense was mitigated by his mental condition. See T.C.A. § 40-35-113(8). The court noted that the defendant's mental condition was such that he was able to work, read a newspaper, and be an umpire. Noting its concerns about the impact of Blakely v. Washington, 542 U.S. 296 (2004), on Tennessee's sentencing statute, the trial court imposed the presumptive sentence of twenty years.

The defendant's complaint with the sentence he received is that the trial court failed to allow mitigation of his sentence based upon his mental condition. He argues that he should have received the minimum sentence within the applicable range, which is fifteen years.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986). The record in this case reflects that the trial court properly considered the relevant principles, facts, and circumstances and that it made adequate findings on the record. Its determination is entitled to the presumption of correctness.

The sentence to be imposed by the trial court for a Class A felony is presumptively the midpoint in the range. T.C.A. § 40-35-210(c) (2003) (repealed 2005). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act, and its findings are adequately supported by the record. T.C.A. § 40-35-210, Sentencing Commission Cmts.; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

The defendant contends that the trial court failed to find a mitigating factor based upon his mental retardation. The relevant mitigating factor provides, "The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor[.]" T.C.A. § 40-35-113(8). There was proof that the defendant was a "slow learner." There was also proof that he was classified as mildly mentally retarded. However, the defendant has not offered any proof or made an argument explaining how his mental status made him less culpable for the offense. At trial, the defense theory was that the defendant did not commit the crime. There was evidence via the defendant's pretrial statement that the defendant understood the wrongful nature of his actions because he expressed regret and said that he wished he had not done it.

We are aware of the supreme court's decision in <u>State v. Blackstock</u>, 19 S.W.3d 200 (Tenn. 2000), but we hold that it is factually distinguishable. In <u>Blackstock</u>, the mentally retarded defendant sexually assaulted a seven-year-old child. <u>Id.</u> at 203. Blackstock functioned on a level at or below that of a nine-year-old child and had an IQ of 55. <u>Id.</u> at 212. The defendant in <u>Blackstock</u> could not read or write, did not know the shape of a triangle, did not know how many stars were on the American flag, and could not count higher than the number ten. <u>Id.</u> at 204. The victim and her mother had previously lived in Blackstock's home, but they were no longer living there at the time of the offense. <u>Id.</u> In contrast, the defendant in this case testified that he considered himself a father figure to the victim. The evidence demonstrates that he understood and accepted a role as a caretaker of the victim. He could read newspapers and could read and write well enough to complete an umpire's examination, whether or not the answers were supplied to him. There is evidence in documentation attached to the presentence report that the defendant's Verbal Scale IQ is 68, his Performance Scale IQ is 74, and his Full Scale IQ is 60, and he is classified as mildly mentally retarded. Given these facts, we hold that the defendant has not demonstrated that the trial court erred in declining to apply mitigating factor (8).

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE