IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 8, 2005

## STATE OF TENNESSEE v. DAVID GENE HOOPER

**Appeal from the Criminal Court for Hamilton County**
**No. 242458     Rebecca J. Stern, Judge**

---

**No. E2004-01053-CCA-R3-CD Filed August 16, 2005**

---

A Hamilton County Criminal Court Jury convicted the defendant, David Gene Hooper, of rape, a Class B felony, and incest, a Class C felony, and the trial court sentenced him to concurrent terms of eight years for the rape and three years for the incest to be served on community corrections after serving eleven months and twenty-nine days in the county workhouse. The defendant appeals, claiming the trial court erred (1) in failing to grant a mistrial based upon the state's failure to disclose exculpatory evidence until the middle of trial and in prohibiting him from cross-examining the victim concerning the exculpatory evidence; (2) in repeatedly admitting testimony which bolstered the victim's complaint through multiple witnesses; (3) in allowing testimony from various witnesses concerning the fact that victims of sexual abuse frequently delay reporting an attack; (4) in allowing the state to cross-examine the defendant concerning his possession of marijuana on the day he was arrested, approximately two years after the crime; and (5) in failing to instruct the jury on the lesser included offenses of attempted rape, attempted sexual battery, and assault pursuant to State v. Burns, 6 S.W.3d 453 (Tenn. 1999). We conclude that although the trial court should have allowed the defendant to cross-examine the victim concerning the evidence the state failed to disclose until trial, the error was harmless. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. C. MCLIN, JJ., joined.

Ardena J. Garth, District Public Defender, and Donna Robinson Miller, Assistant Public Defender, for the appellant, David Gene Hooper.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; William H. Cox, III, District Attorney General; and Mary Sullivan Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant was charged with raping his fifteen-year-old adoptive sister[1]. At the trial, the victim testified that the defendant's father, David Hooper, Sr., married her mother and adopted her when she was in the fifth or sixth grade. She said she had known the defendant since she was very young.

The victim testified that on October 14, 2000, the defendant came to her house with his son, Bradley Hooper. She said the defendant asked if she and her friend, Kelli Winchester, wanted to go with him and Bradley "on some mountain and just for a regular visit." She said she agreed and after picking up Ms. Winchester, they went to a truck stop because the defendant needed to remove some items from his truck. She said they went to Krystal's to get something to eat and to the liquor store. She said that after the defendant returned from the liquor store, everyone started drinking and that they went to the mountain where they drank some more and smoked marijuana. She said everyone but her smoked marijuana. She said that when they left the mountain, the defendant wanted her to ride up front with him because she was getting drunk. She said the next thing she remembered was arriving at a hotel.

The victim testified that when they arrived at the hotel, Ms. Winchester left to call home for permission to stay overnight at the hotel, which her mother gave. She said that during this time, she drank some more alcohol and passed out on the bed. She said the next thing she remembered was the defendant removing her clothes and touching her. She said that she began to cry, that she told the defendant to stop, but that he did not stop. She said the defendant was not wearing any clothes. She said the defendant held her hands above her head, spread open her legs, and forced her to have sex with him. She said that while the defendant was raping her, the door to the room opened and something was said but that she did not know who opened the door or what was said. She said that about one minute after the door opened, the defendant left the room. She said that as soon as the defendant left, she gathered her clothes, dressed quickly, and went downstairs to the car where she found Ms. Winchester and Bradley waiting. She said the defendant drove her home, repeatedly telling her that nothing happened.

The victim testified that when she arrived home, she did not tell her family what happened because she loved her "family very much and did not want this to ruin them." She also said she was afraid her family would not believe her and would blame her for saying the defendant raped her. She said that she talked to Ms. Winchester about the rape, who urged her to tell someone else, but that she did not tell anyone else for three months. The victim testified that because of the rape, she quit school, became very depressed, and attempted suicide. She said reporting the rape had strained her relationship with her parents.

On cross-examination, the victim acknowledged that her parents did not allow her to drink and that if her parents had known she was drinking on the day in question, she would have been in

---

[1]The record refers to the victim as the defendant's step-sister.

trouble. She acknowledged that she had been alone with the defendant many times before and that he had never attempted to give her alcohol or to have sex with her.

Kelli Winchester's testimony essentially agreed with the victim's testimony. Relevant to this appeal, she said she fell asleep in the hotel room on a bed with Bradley. She said that when she woke up, the defendant was on top of the victim, raping her, and that the victim was moaning and crying. She said that had her mother known she was drunk or using illegal drugs, she would have been in trouble. She said that she, not the victim, first reported the rape to her mother and that they then reported it to the authorities.

Cathy Winchester testified that she is Kelli Winchester's mother. She said that about two weeks after the rape, the victim told her about it. She said her daughter also told her about the rape. She said the victim was afraid to tell her parents. She said she had rules in her home forbidding her daughter from drinking or smoking marijuana. She said that although she eventually found out her daughter was intoxicated on the night in question, she did not punish her.

Wanda Hixson testified that she worked at Whitwell High School as a school counselor. She said that three months after the rape, Ms. Winchester brought the victim to her office. She said the victim told her that her adopted brother raped her. She said that over the course of the ensuing criminal investigation, she heard the victim repeat the story four or five times and that her story was "almost identical every time." Ms. Hixson said the rape had adversely affected the victim's scholastic performance and her social interaction with others.

Chattanooga Police Department Detective Kevin Akins testified that he was involved in investigating the victim's rape. He said that the victim gave him an explanation for her delay in reporting the rape and that he was satisfied with her explanation.

Chattanooga Police Officer Gerald Dossett testified that he took a statement from Kelli Winchester who said that the defendant raped the victim. He said that he contacted the victim but that the victim did not cooperate with his investigation at that time.

The state recalled the victim. She testified that before being raped by the defendant, she had never had sexual intercourse.

Cathy Spada testified that she was a certified pediatric nurse practitioner and a certified sexual assault nurse examiner. She said she had worked in the medical field for over twenty years. She said investigating officers brought the victim to her for a medical examination. She testified that her findings were consistent with sexual penetration but that she could not state for certain that the victim had ever had sex. She said that in her practice, a delay in reporting sexual abuse is normal.

The defendant testified that he was fifty-three years old at the time of trial, that his father adopted the victim, and that he did not have sex with the victim. He said that he did not give the victim alcohol or marijuana on the day in question and that he was not alone in the motel room with

her. He said that on the day in question, he went to his father's house because he had not visited him in a week. He said that while he was there, he and Bradley decided to go to the mountain. He said the victim overheard them and asked if she could go with them. He said that before they left, the victim asked if her friend, Kelli Winchester, could come with them. He said that he agreed and that they left to pick up Ms. Winchester. He said that before they left Ms. Winchester's house, he wanted to make sure her mother knew who he was and had given Kelli her permission to join them.

The defendant testified that although he did not provide the victim with alcohol, she may have found a bottle on the floor of his Suburban. He said that while they were on the mountain driving, he noticed that the victim and Ms. Winchester began "acting a little different." He said he turned around and saw the victim with a bottle of alcohol. He said that he attempted to take the alcohol from the victim, that she pulled the bottle back away from him, and that he told his son to take the bottle from the victim because he was driving and could not do so. He said the bottle was two-thirds consumed when his son got the bottle from the victim. He said that after his son took the bottle away from the victim, they continued driving around the mountain. He said either the victim or Ms. Winchester reacquired the bottle of alcohol. He said that the next thing he knew, one of the girls threw the bottle out of the moving Suburban and that it was empty. He said that he was not drinking during the entire time.

The defendant testified that he did not want to take the victim home immediately because he was afraid of how his father and the victim's mother might react. He said he decided to try to get the victim sober by buying her some food and taking her to a hotel room. He said that after they arrived at the hotel, the victim and Ms. Winchester went to use a telephone to call Ms. Winchester's mother. He said that when the victim and Ms. Winchester did not immediately return, he left Bradley in the room and went looking for them and found them by a soft drink machine talking to some teenage boys. He said that when he found the victim, "[s]he was leaning up against the wall and still acting silly and everything." He said he got into a heated argument with Ms. Winchester. He said his only concern was getting the victim "sobered up" before taking her home. He said that after his argument with Ms. Winchester, he was able to persuade the girls to return to the room. He said he then walked to the Waffle House to get something to eat. He said that when he returned and opened the door, Bradley and Ms. Winchester were having sex and that he closed the door, left again, and returned approximately thirty minutes later.

The defendant testified that when he returned to the room the second time, Bradley and Ms. Winchester were lying on one bed and the victim was lying on the other. He said that he and Bradley tried to get the victim into the shower and that the victim became sick. He said Ms. Winchester was able to help the victim get undressed and into the shower. He said that after the shower, they left and he took the victim and Ms. Winchester to Ms. Winchester's home.

On cross-examination, the defendant testified that he did not have marijuana on him when they went to the mountain and that if he had known anyone else had marijuana, it would have been a problem. The defendant acknowledged, however, that when he was arrested, the arresting officer found marijuana in his pocket.

-4-

Bradley Hooper testified on behalf of the defendant, and his version of the events essentially agreed with that of the defendant's. Of particular relevance, he said that he had sex with Kelli Winchester while the victim was asleep on the other bed and his father was outside and that his father did not rape the victim.

## I. EXCULPATORY EVIDENCE

### A. Failure to Grant Continuance or Mistrial

The defendant contends the trial court erred in failing to grant him a continuance or a mistrial when the state did not disclose certain exculpatory evidence until mid-morning of the first day of trial. The state contends that the trial court properly refused to grant a mistrial or a continuance because the evidence disclosed to the defense on the first day of trial was inadmissible.

At a jury-out hearing on the morning of the first day of the trial, the prosecution gave the defense a report made in December of 2001 at the Children's Advocacy Center in Chattanooga. The report reflects that the victim told the interviewer that on July 21, 2001, her friend's dad, Bobby Perkins, raped her. The victim's account of Bobby Perkins raping her is nearly identical to her account of the defendant raping her except the victim said that on the night Bobby Perkins raped her, he also had sex with his daughter.

The Children's Advocacy Center report also states that the victim told the interviewer that because of the rapes, she had begun to remember certain portions of her childhood that were traumatic. She said that she remembered her father sexually abusing her when she was four or five years old. When asked what portions of the body her father used to touch her with, the victim responded that he used his fingers and his penis. When asked what portions of her body her father touched, the victim responded that he touched her vagina.

The Children's Advocacy Report reflects the victim told the interviewer that she first reported that Bobby Perkins raped her after her parents had reported her to juvenile authorities for underage consumption of alcohol. The report states that the victim explained she was drunk because Bobby Perkins made her drink before he raped her and that when she came home from being raped, she was still drunk. The report states the victim said, however, that law enforcement authorities did not prosecute Bobby Perkins because his daughter told them that she did not have sex with her father and that her father did not rape the victim.

After reading the report, counsel for the defendant moved for a mistrial based upon the state's failure to disclose exculpatory material under the doctrine announced in Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), or, in the alternative, for a continuance. The defendant asked that he be allowed to cross-examine the victim with the substantive contents of the report if the trial court would not give him a continuance or a mistrial. The trial court denied both defense motions stating, "I don't find the fact that the victim has been victimized subsequent to this relevant to her credibility or relevant to rape shield statute or relevant to any matter at trial. . . . Now if she subsequently

recanted and said I made all that up and lied about it, it would be, but there is no indication, there is no good faith basis for that."

After the trial court's ruling, the defense moved to call the victim for a proffer concerning this issue in order to preserve the record for appeal. The trial court granted the defendant's request but ordered the proffer to occur at the conclusion of the trial. At the proffer, the victim testified she did not actually make the report concerning Bobby Perkins raping her. She said her parents filed a report with juvenile authorities concerning her use of alcohol. She said that because of this report, she had to be interviewed. She acknowledged that she first said Bobby Perkins raped her during this interview.

The victim testified that Bobby Perkins raped her in July 2001. She said that after she reported the rape during the interview, law enforcement authorities contacted her and told her they would not proceed with charges against Mr. Perkins because his daughter failed to corroborate her allegations.

The victim testified that as a result of this second rape, she began having flashbacks of her childhood. She said that she remembered her adoptive father placing his finger in her vagina when she was five years old but that he did not have sexual intercourse with her. She said that no charges were filed against her adoptive father and that her mother did not believe her allegations.

On appeal, the defendant contends the trial court erred in failing to grant a mistrial or a continuance based upon Brady violations. He also contends the trial court's barring cross-examination of the victim with the contents of the report violated his right to due process and his right to confront his accuser. The state contends that the trial court properly denied the defendant's motions for mistrial and continuance because the evidence was irrelevant and inadmissible. The state does not address the defendant's due process and confrontation arguments.

In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S. Ct. at 1196-97. In order to establish a due process violation under Brady, four prerequisites must be met:

> 1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information, whether requested or not);
>
> 2. The State must have suppressed the information;
>
> 3. The information must have been favorable to the accused; and
>
> 4. The information must have been material.

State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995). This court has stated that the information need not be admissible, only favorable to the defendant. See State v. Spurlock, 874 S.W.2d 602, 609 (Tenn. Crim. App. 1993). The burden of proving a Brady violation rests with the defendant, and the violation must be proven by a preponderance of the evidence. Edgin, 902 S.W.2d at 389.

Initially, we note that a Brady violation is not implicated here because the state did not completely fail to disclose the evidence. See State v. Caughron, 855 S.W.2d 526, 548 (Tenn. 1993) (stating that while a "complete non-disclosure of significant exculpatory evidence often makes an easy case for a due process violation, delayed disclosure requires an inquiry into whether the delay" resulted in prejudice to the defendant). Instead, the defense learned of the evidence on the first day of trial. Although the defense asked the trial court for a continuance in order to investigate the victim's allegations against her father and Bobby Perkins, the defendant presented no evidence at the motion for new trial hearing concerning what such investigation would have revealed. He has also failed to demonstrate that the result of his trial would have been different had he been provided with the evidence earlier. We conclude that the defendant cannot prevail on this claim.

## B. Rape Shield Law

The defendant contends the trial court abused its discretion by not allowing him to cross-examine the victim concerning the information contained within the Children's Advocacy Center report. See Tenn. R. Evid. 412 (rape shield law). The state asserts the trial court properly excluded the evidence. We agree with the defendant.

Rule 412, Tenn. R. Evid., provides that evidence of specific incidents of a sex offense victim's sexual behavior with persons other than the accused is inadmissible unless it is offered to rebut or explain scientific or medical evidence or to prove or explain the source of semen, injury, disease, or knowledge of sexual matters and the probative value of the evidence outweighs its prejudicial value to the victim. The defendant argues that the rape shield law does not prevent evidence of prior false allegations of rape, citing State v. Wyrick, 62 S.W.3d 751, 781-82 (Tenn. Crim. App. 2001). In Wyrick, the victim had made a prior allegation of rape when she came home late one night and needed an excuse. However, she recanted the allegation before the police were called. Id. at 769. At trial, the defendant sought to cross-examine the victim concerning this incident, but the trial court ruled he had failed to comply with the notice requirements of Rule 412. On appeal, this court held that a prior allegation of false rape was not within the meaning of "sexual behavior" in Rule 412, and thus, the trial court improperly excluded the evidence. Id. at 771.

We conclude Wyrick's analysis is not dispositive of this issue. Unlike the victim in Wyrick, the victim in the present case has not recanted her allegation that Bobby Perkins raped her. However, in the present case, as in Wyrick, the defense strategy in introducing the evidence of a victim's prior allegations of rape was to prove the absence of sexual activity on that particular occasion. We therefore hold that Rule 412 does not prevent the admissibility of evidence of a victim's prior allegation of rape if the defendant is seeking to introduce the evidence to contend that the prior rape allegation is false.

## C. Confrontation Clause

The defendant contends the trial court's failure to allow him to cross-examine the victim concerning the victim's statements to the Children's Advocacy Center counselor violated his right to confront his accuser as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. The state has failed to respond to this contention.

The defendant's constitutional right to confront the witnesses against him includes the right to conduct meaningful cross-examination. Pennsylvania v. Ritchie, 480 U.S. 39, 51, 107 S. Ct. 989, 998 (1987); State v. Brown, 29 S.W.3d 427, 431 (Tenn. 2000); State v. Middlebrooks, 840 S.W.2d 317, 332 (Tenn. 1992). Denial of the defendant's right to effective cross-examination is "'constitutional error of the first magnitude'" and may violate the defendant's right to a fair trial. State v. Hill, 598 S.W.2d 815, 819 (Tenn. Crim. App. 1980) (quoting Davis v. Alaska, 415 U.S. 308, 318, 94 S. Ct. 1105, 1111 (1974)). "The propriety, scope, manner and control of the cross-examination of witnesses, however, rests within the sound discretion of the trial court." State v. Dishman, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995); see also Coffee v. State, 216 S.W.2d 702, 703 (Tenn. 1948). Furthermore, "a defendant's right to confrontation does not preclude a trial court from imposing limits upon cross-examination which take into account such factors as harassment, prejudice, issue confrontation, witness safety, or merely repetitive or marginally relevant interrogation." State v. Reid, 882 S.W.2d 423, 430 (Tenn. Crim. App. 1994). This court will not disturb the limits that a trial court has placed upon cross-examination unless the court has unreasonably restricted the right. Dishman, 915 S.W.2d at 463; see State v. Fowler, 373 S.W.2d 460, 466 (Tenn. 1963).

Because we have concluded that Rule 412 does not prohibit the introduction of evidence showing the absence of sexual activity, we conclude the defendant's right to confront his accuser was violated. The trial court's ruling pursuant to Rule 412 barring the defendant from cross-examining the victim concerning her allegation of rape against Bobby Perkins constituted constitutional error. However, that does not end our inquiry. We must now determine the error's impact on the proceedings.

## D. Harmless Error

Both the United States Supreme Court and our supreme court "have held that violations of the Confrontation Clause are subject to harmless error review." State v. Gomez, 163 S.W.3d 632, 647 (Tenn. 2005) (citing Coy v. Iowa, 487 U.S. 1012, 1021, 108 S. Ct. 2798 (1988), and Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431 (1986)). Therefore, we must determine whether the constitutional error was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967).

In order to assess whether the error was harmless beyond a reasonable doubt, we must consider whether and to what extent the defendant could have pursued avenues of inquiry regarding the victim's reporting that Bobby Perkins' raped her. Initially, we note that one avenue of inquiry

the defendant could have pursued concerning the Children's Advocacy Center report would have been to cross-examine the victim concerning her credibility.

Evidence of conduct involving dishonesty may be inquired into on cross-examination of a witness if certain conditions are met. See Tenn. R. Evid. 608. Rule 608 provides,

> (b) Specific Instances of Conduct.– Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness . . . . The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:
>
> (1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry.

Under 608(b), if a witness denies the conduct, the examiner may not prove the conduct through extrinsic evidence. See State v. Shepherd, 862 S.W.2d 557 (Tenn. Crim. App. 1992). In the present case, the victim testified during the proffer that Bobby Perkins' daughter told authorities that her father did not have sex with her and did not rape the victim. We conclude this constitutes a good faith basis for the defendant asking the victim whether she made a false allegation of rape against Bobby Perkins to avoid the consequences of her drinking.

The victim also testified at the proffer that the reason the authorities did not prosecute Bobby Perkins was because of what his daughter told them. While this provides the defendant a good faith basis for asking the victim if she knew (1) that no charges were brought against Bobby Perkins and/or (2) that Bobby Perkins' daughter told authorities that her father did not have sex with her and did not rape the victim, we conclude the statement of Bobby Perkins' daughter is hearsay. See Tenn. R. Evid. 802. We also conclude her statement does not fall within a recognized exception to the hearsay rule and is not admissible under the Tennessee Rules of Evidence.

In State v. Brown, 29 S.W.3d 427 (Tenn. 2000), our supreme court held that due process may occasionally require the introduction of otherwise inadmissible hearsay evidence. In Brown, the defendant sought to introduce evidence of statements the victim made to her friends regarding her knowledge of and familiarity with sex. The defendant claimed these statements were admissible because they were offered to rebut the state's claim that the defendant caused the victim's injuries and that the victim's knowledge of sex came from the defendant's raping her. 29 S.W.3d at 431. The court noted that although the statements were hearsay and not admissible under the rules of

evidence, the defendant's right to present a defense as enshrined in the Due Process Clause of the Fourteenth Amendment to the United States Constitution essentially trumped the rule against hearsay. Id. at 433 (citing Chambers v. Mississippi, 410 U.S. 284, 93 S. Ct. 1038 (1973)). Of particular relevance, the court concluded that because the victim's statements were similar to those of a party opponent, they possessed inherent reliability. Id. at 435.

We believe Brown is distinguishable from the present case and conclude due process does not require the admission of the hearsay statement of Perkins' daughter. First, the evidence sought to be introduced in Brown had a direct bearing on the charges for which the defendant was on trial because they were the victim's own statements. In the present case, the statements are not those of the victim but of Bobby Perkins' daughter, and they have no direct bearing on the charges against the defendant. Second, we discern no inherent reliability in the daughter's hearsay statements as the court found in Brown. To summarize, the defendant should have been allowed to cross-examine the victim concerning whether she made a false allegation of rape against Bobby Perkins, including the fact of the similarity of the allegations and the delayed reporting of the charges. He could also have examined her concerning her knowledge of the resulting police investigation, i.e.–that no charges were filed against Bobby Perkins. However, the rule against hearsay would have prevented the defendant from asking the victim about Bobby Perkins' daughter's statement. Because the victim testified at the proffer that she did not make a false allegation of rape, Rule 608 would operate to prevent the defendant from calling Bobby Perkins or his daughter to contradict the victim's denial.

Rule 404(b), Tenn. R. Evid., might have provided the defendant an avenue for introducing testimony from Bobby Perkins and his daughter as substantive evidence, notwithstanding Rule 608. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes." This court has stated that such other purposes may include "motive, identity, common scheme or plan, intent or the rebuttal of accident or mistake defenses." Wyrick, 62 S.W.3d at 771; see also Tenn. R. Evid. 404, Advisory Commission Comments; State v. Parton, 694 S.W.2d 299, 302 (Tenn. 1985). Arguably, the defendant could claim a similar motive by the victim to accuse him falsely of rape as she would have had in accusing Bobby Perkins falsely–to avoid punishment for drinking.

While the testimony from Bobby Perkins and his daughter to the effect that Bobby Perkins did not rape the victim could have been admissible under Rule 404, the defendant failed to call them at the motion for new trial hearing, and we are left only to speculate what their testimony may have been. The trial court's erroneous ruling under Rule 412 prevented the defendant from asking the victim whether she made a false allegation of rape and from questioning her regarding some of the circumstances surrounding that event. However, in light of the victim's proffered testimony that she was raped by Bobby Perkins, we conclude the trial court's error in refusing to allow the defendant to cross-examine the victim concerning the contents of the Children's Advocacy Center Report was harmless beyond a reasonable doubt. Because we conclude that the constitutional error was harmless beyond a reasonable doubt, we also conclude that the trial court's erroneous ruling pursuant to Tenn. R. Evid. 412 was harmless. Finally, in this context, we note that the defendant has failed to show

the necessary prejudice to establish a due process violation for the state's delayed disclosure of the Children's Advocacy Center report.

## II. FRESH COMPLAINT TESTIMONY

The defendant next contends the trial court erred in allowing "fresh complaint" testimony through various prosecution witnesses. The state asserts that the defendant has waived this issue by failing to object to the introduction of this evidence at the trial and for failing to raise this issue in his motion for new trial. In reply, the defendant contends that he did object on numerous occasions to the introduction of this evidence.

Although the defendant did object at numerous occasions to fresh complaint testimony, he did not raise this issue in his motion for new trial. Failure to raise an evidentiary issue in a motion for new trial constitutes waiver. T.R.A.P. 3(e); State v. Leach, 148 S.W.3d 42, 55 (Tenn. 2004). The defendant is not entitled to relief on this issue.

## III. IMPROPERLY BOLSTERED TESTIMONY

The defendant next contends the trial court erred in allowing Detective Akins, Cathy Spada and Wanda Hixson to testify that victims of sexual abuse frequently delay reporting the crime. He asserts such testimony improperly bolstered the victim's credibility, thereby requiring reversal. The state again contends that the defendant has waived this issue for failing to raise it in his motion for new trial. The state further contends that the defendant is not entitled to relief on this issue because the trial court sustained his objection during Cathy Spada's testimony concerning this issue and because Wanda Hixson did not testify that victims of sexual abuse often delay reporting the crime. In reply, the defendant contends that this issue rises to the level of plain error pursuant to Rule 52(b), Tenn. R. Crim. P. We agree with the state.

During the direct examination of Cathy Spada, the following exchange occurred:

> [Assistant District Attorney General]: With the delay, in your twenty years of experience, is a delayed rape of this kind abnormal?
> [Kathy Spada]: No.
> [Counsel for Defendant]: Objection, Your Honor.
> [Trial Court]: Sustained.

On cross-examination, the following exchange occurred:

> [Counsel for Defendant]: Outside of that seventy-two hours, it then becomes - -
> [Cathy Spada]: Then in my practice I see mostly all delayed reporting, so I would not expect to find any findings because most children do not tell right away anyway. So the majority of the children I see at the Children's Advocacy Center –
> [Trial Court]: You are going beyond her question.

Concerning the testimony of Wanda Hixson, the record does not reflect her testifying that victims of sexual abuse often delay reporting the crime. Rather, her testimony in this area concerned the events in the victim's life that caused her to delay reporting the crime. The record is similarly devoid of any testimony from Detective Akins that victims of sexual abuse often delay reporting the crime. He did, however, testify that the victim explained why she had delayed reporting the crime and that he accepted her explanation.

We note that only Cathy Spada testified that victims of sexual abuse often delay reporting the crime, that the defendant's attorney objected, and that the trial court sustained the objection. Although on cross-examination she went beyond the scope of a question to state that delayed reporting of sexual abuse is the norm in cases involving minors, the defendant failed to object after the trial court interrupted the witness and failed to ask for a curative instruction. The defendant has failed to demonstrate any error of the trial court, and he is not entitled to relief on this issue.

## IV. PRIOR BAD ACTS

The defendant next contends that the trial court erred in allowing the state to cross-examine him concerning the fact that he was in possession of marijuana on the day of his arrest, nearly two years after the rape. The state asserts that the defendant has waived this issue by failing to raise it in his motion for new trial. It also asserts the trial court properly allowed it to cross-examine the defendant concerning this issue because he opened the door on direct examination. In reply, the defendant contends that this issue rises to the level of plain error pursuant to Rule 52, Tenn. R. Crim. P. We agree with the state.

On direct examination, the defendant testified that he did not allow his son to have marijuana in the car because having marijuana in a car is illegal. On cross-examination, over the defendant's objection, he acknowledged, however, that when he was arrested on the rape charges, he had just exited a car at a pawn shop and that a subsequent search of his person revealed the presence of marijuana.

Generally, evidence of prior bad acts is not admissible at the trial. See Tenn. R. Evid. 404. However, cross-examining a defendant about specific instances of conduct when the defense opens the door to character evidence has been allowed. See State v. Nichols, 877 S.W.2d 722 (Tenn. 1994) (holding that the state could cross-examine the defendant about a prior bad act in order to rebut the defense witnesses' testimony about the defendant's docile nature); State v. Patton, 593 S.W.2d 913 (Tenn. 1979) (noting that a psychiatrist's testimony opened the door to the state's being able to cross-examine the defendant about specific instances of conduct);.

We conclude that the defendant opened the door to cross-examination of his possession of marijuana by stating on direct examination that he did not allow marijuana in his car because it is illegal and that the trial court's allowing the state to impeach the defendant with this evidence was not error. The defendant is not entitled to relief on this issue.

# V. JURY INSTRUCTIONS

The defendant contends the trial court erred in not instructing the jury on the lesser included offenses of attempted rape, attempted sexual battery, and assault. The state responds that the defendant waived this issue for failing to raise it in his motion for new trial. The state also argues that insufficient proof was presented at the trial to justify a jury instruction on attempt. The state concedes, however, that the trial court erred in failing to instruct the jury on the lesser included offense of assault, but it contends the error was harmless.

In criminal cases, the trial court has the duty to charge the jury on all of the law that applies to the facts of the case. See State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992). Anything short of a complete charge denies the defendant his constitutional right to a trial by jury. See State v. McAfee, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987).

Initially, we note the state did not cite T.C.A. § 40-18-110(c) for the proposition that a defendant waives a jury instruction issue on appeal by failing "to request the instruction of a lesser included offense . . . . Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief in a motion for new trial or on appeal." The record reflects that the defendant did not request jury instructions on the lesser included offenses of attempted rape, attempted sexual battery, and Class B misdemeanor assault. However, this court has split as to whether § 40-18-110 violates a defendant's right to trial by jury.

In State v. Robert Page, No. W2003-01342-CCA-R3-CD, Shelby County, (Tenn. Crim. App. Aug. 26, 2004), app. granted (Tenn. Jan. 18, 2005), a panel of this court held "the waiver provision of Tennessee Code Annotated section 40-18-110 is an unconstitutional abrogation of a criminal defendant's constitutional right to have the jury charged on all offenses included within the indicted offense and supported by the proof adduced at trial." However, in State v. Robert Eugene Hall, No. M2003-02326-CCA-R3-CD, Davidson County (Tenn. Crim. App. Feb. 8, 2005), another panel held that "a defendant must request an instruction of the lesser included offense on the record prior to the trial court's charge to the jury; otherwise, the right to appeal the trial court's failure to so instruct is waived." Slip op. at 7 (citing Page, dissenting slip op. at 3). In any event, we conclude the defendant is not entitled to relief on this issue.

If an offense is a lesser included offense, then the trial court must conduct the following two-step analysis in order to determine whether the lesser included offense instruction should be given:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine

if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

State v. Burns, 6 S.W.3d 453, 469 (Tenn. 1999).

If a trial court improperly omits a lesser included offense instruction, then constitutional harmless error analysis applies and this court must determine if, beyond a reasonable doubt, the error did not affect the outcome of the trial. State v. Ely, 48 S.W.3d 710, 725 (Tenn. 2001). "In making this determination, a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." State v. Allen, 69 S.W.3d 181, 191 (Tenn. 2002).

### A. Attempted Rape and Attempted Sexual Battery

As pointed out in the defendant's brief, attempted rape is a lesser included offense of rape under Burns, part (c). See State v. Marcum, 109 S.W.3d 300, 302 (Tenn. 2003). Moreover, sexual battery and Class B misdemeanor assault also are lesser included offenses of rape. See State v. Elkins, 83 S.W.3d 706, 711-12 (Tenn. 2002); State v. Bowles, 52 S.W.3d 69, 77 (Tenn. 2001).

Regarding the trial court's failure to charge attempted rape as a lesser included offense of rape, a person commits attempt who, acting with the kind of culpability otherwise required for the offense,

> (1) Intentionally engages an action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101(a). The statute also provides that it is "no defense to prosecution for criminal attempt that the offense attempted actually was committed." T.C.A. § 39-12-101(c).

In Marcum, the defendant was convicted of rape of a child for forcing the victim to put her mouth on his penis. The defendant claimed that the jury could have concluded that no penetration of the victim's mouth occurred, warranting an instruction on the lesser included offense of attempted

-14-

child rape. The supreme court disagreed, noting that the definition of sexual penetration included fellatio and that fellatio did not require intrusion into the victim's mouth. Id. at 304. The court determined that given the victim's testimony that she performed fellatio on the defendant and that the defendant contended the incident never occurred, the testimony "was susceptible of only two interpretations--that the rape occurred or that it did not." Id. The supreme court held that an attempt instruction was not required because there was only proof of the completed crime as opposed to an attempt. Id. Thus, even though the elements of an attempt under T.C.A. § 39-12-101 were necessarily proven, no instruction was needed.

In the present case, we note that rape requires unlawful sexual penetration and sexual battery requires unlawful sexual contact. See T.C.A. §§ 39-13-503, -505. The victim testified that the defendant penetrated her vagina with his penis, and Ms. Winchester testified that she witnessed the defendant having sex with the victim. The defendant testified that he did not have sex with the victim, and his son also testified that the defendant did not have sex with the victim. The defendant's theory, in part, was that the victim and Ms. Winchester made up the allegations of rape to avoid the serious consequences they were likely to face from their parents for being intoxicated. Like Marcum, the evidence was susceptible of only two interpretations, either that the defendant raped the victim or that he did not. There is no evidence that the defendant only attempted to penetrate the victim, and the trial court was not required to instruct the jury on attempted rape or attempted sexual battery. The defendant is not entitled to relief on this issue.

### B. Misdemeanor Assault

Class B misdemeanor assault is intentional or knowing physical contact with another person, and a reasonable person would regard the contact as extremely offensive or provocative. See T.C.A. § 39-13-101(a)(3). The supreme court has held that Class B misdemeanor assault is a lesser included offense of rape of a child under part (b)(2) of the Burns test. See Elkins, 83 S.W.3d at 711-12. We hold that it is likewise a lesser included offense of rape under part (b)(2) of the Burns test. We must now determine whether the facts of this case warranted an instruction on Class B misdemeanor assault.

The victim testified that the defendant raped her by forcing his penis into her vagina. We conclude that this incident involved contact that a reasonable person would regard as extremely offensive or provocative, and we hold that an instruction on Class B misdemeanor assault as a lesser included offense of sexual battery was warranted.

Regarding harmless error, our supreme court has held that when a jury convicts on the greater offense "to the exclusion of the immediately lesser offense, [it] necessarily rejected all other lesser-included offenses." Allen, 69 S.W.3d at 189 (citing State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998)). The trial court instructed the jury on the charged offense of rape and the immediately lesser included offense of sexual battery. The jury chose to convict the defendant of the greater offense, and we conclude that under Allen, the trial court's failure to instruct on Class B misdemeanor assault was harmless error.

-15-

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____

JOSEPH M. TIPTON, JUDGE