IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2010

## BERNARD HENRY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 02-05634     John T. Fowlkes, Jr., Judge

**No. W2009-01226-CCA-R3-PC  - Filed May 21, 2010**

The petitioner, Bernard Henry, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of both trial and appellate counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and D. KELLY THOMAS, JR., JJ., joined.

Jason Poyner, Memphis, Tennessee, for the appellant, Bernard Henry.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris West, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner was convicted by a Shelby County jury of two counts of aggravated child abuse and neglect, a Class A felony, and sentenced by the trial court as a Range I, violent offender to concurrent sentences of twenty-five years. On direct appeal, we affirmed the convictions but modified each sentence to twenty years based on our finding that the trial court applied inappropriate enhancement factors. See State v. Bernard J. Henry, No. W2003-03045-CCA-R3-CD, 2004 WL 2848382, at *1 (Tenn. Crim. App. Dec. 9, 2004), perm. to appeal denied (Tenn. Mar. 28, 2005).

Our direct appeal opinion reveals that the petitioner's convictions stemmed from his abuse of his two-year-old daughter, which left the child with numerous "soft tissue injuries" to her skin, including "a serious, deep infection on the back of her right leg and an infected wound on her upper lip." Id. at *2. The victim, additionally, "had loop-shaped marks on her legs, indicating that [she] had been hit with a looped cord," and "an injury on one of her buttocks" that was either a burn or "'where a chunk of flesh had come off.'" Id. In both his statement to police and in his trial testimony, the petitioner admitted that he had spanked the victim because she had urinated on herself but denied that he caused the injuries. Id. at *2-3. His girlfriend, Tammy Thompson, who was at the home when officers arrived, also stated that she and the petitioner had whipped the victim because she was urinating on herself. Id. at *1.

The petitioner raised claims of ineffective assistance of both trial and appellate counsel in his petition for post-conviction relief, alleging, among other things, that trial counsel was ineffective for failing to present witnesses favorable to his defense and that appellate counsel was ineffective for failing to raise as an issue on appeal whether the State, by parading the victim in front of the jury, violated the petitioner's right to confront the witnesses against him. At the October 5, 2006, evidentiary hearing, however, the post-conviction court did not allow the petitioner to present any proof in support of his claim of ineffective assistance of appellate counsel and subsequently denied the petition on the basis that the petitioner had failed to meet his burden of showing that trial counsel was ineffective in his representation.

On appeal, this court concluded that the post-conviction court improperly denied the petitioner an opportunity to be heard on his claim of ineffective assistance of appellate counsel. Accordingly, we vacated the judgment of the post-conviction court and remanded for an additional evidentiary hearing to be conducted on that issue, noting that "[a]fter the post-conviction court considers and rules on the merits of the Petitioner's claim of ineffective assistance of appellate counsel, appellate review of the post-conviction court's rulings on the ineffective assistance of trial and appellate counsel may proceed anew in accordance with the Tennessee Rules of Appellate Procedure." Bernard Henry v. State, No. W2007-00679-CCA-R3-PC, 2008 WL 2901596, at *2 (Tenn. Crim. App. July 25, 2008).

Following a March 26, 2009, evidentiary hearing, the post-conviction court denied the petitioner's claim of ineffective assistance of appellate counsel, finding that the petitioner had failed to show that appellate counsel was deficient for failing to raise the issue on appeal or that he was prejudiced as a result of appellate counsel's failure to do so. The petitioner then filed a timely notice of appeal to this court, arguing that the post-conviction court erred in finding that he received the effective assistance of trial and appellate counsel.

At the October 5, 2006, evidentiary hearing, the petitioner testified that his first

appointed counsel from the public defender's office represented him from September 2002 until June 2003, when trial counsel was appointed to replace her. He complained that trial counsel met with him only once before the October 2003 trial for approximately ten or fifteen minutes and then again in the courtroom area during the trial. He said that trial counsel, who had "a lot of paperwork" from his colleague's notes and interviews, never discussed any trial strategy with him and that he did not believe counsel was prepared to go to trial.

The petitioner testified that he asked trial counsel to call Tammy Thompson, who had been indicted with him but was tried separately, as a witness in his case because he wanted to explore the role she had played in the victim's injuries. However, although he believed that the State subpoenaed her, neither the State nor trial counsel called her as a witness at his trial. The petitioner stated that he discussed with trial counsel's colleague his desire to have three other witnesses, including his landlord, called on his behalf at trial, but he never discussed the information with trial counsel. On cross-examination, he testified that trial counsel took over his case because the first attorney left the public defender's office, and he acknowledged that he "g[o]t along pretty well" with both counsel.

Trial counsel, who said he had been licensed to practice law since 1979, testified that he took over the petitioner's case sometime around March 2003, when the petitioner's originally appointed counsel left the public defender's office. The petitioner's original counsel introduced him to the petitioner before she left, and the three of them discussed the case. Thereafter, he met with the petitioner "a number of times," either alone or with his co-counsel. Trial counsel estimated that his meetings with the petitioner, not counting any that occurred during the trial, numbered approximately "a half dozen," during which he discussed with the petitioner, among other things, the charges against him, the discovery provided by the State, his investigation of the case, possible witnesses to be called in the petitioner's defense, and his trial defense strategy, which was to argue that the petitioner had not caused the injuries.

Trial counsel testified that the petitioner provided the names of three possible witnesses: Mr. Wilson, Mr. McCoy, and Doretha Baker. He said that his investigator was unable to locate Mr. McCoy, who had moved and left no forwarding address, but was able to talk to Ms. Baker and Mr. Wilson, both of whom stated that the petitioner was a good father and that the victim was always clean and looked good but that they had not seen her for about a month before the date on which her injuries were discovered. In trial counsel's view, such testimony would have hurt, rather than helped, the petitioner's case:

> In fact, I found it could hurt us because it would imply that things were going well until about a month beforehand and then somehow during that month they never saw the child. One of them said she would ask him about the child, and,

oh, my girl friend has her or something. And, all of a sudden we'd have a missing month and at the end of that missing period of time the child shows up with pretty severe injuries. I thought that could hurt more than it would help.

Trial counsel testified that he did not talk to Thompson but reviewed her statement to police and the transcript of her guilty plea hearing. He said that she admitted that she had hit and disciplined the child, but she also included other information that he did not want before the jury, which was that most of the discipline had been performed by the petitioner and that she had told the petitioner to stop hitting the child with his hands and with his belt because it was not helping with her potty training.

Trial counsel testified that he attempted to have the petitioner's statement to police suppressed but was unsuccessful. He said that the petitioner refused the State's original plea offer of 13.2 years, as well as the subsequent offer of fifteen years. In conveying the latter offer, which was made during his representation, trial counsel discussed with the petitioner the State's evidence, the possible penalties the petitioner faced, and counsel's belief that the petitioner would be unable to prevail on the child neglect charge, even if he managed to do so as to the child abuse charge. Trial counsel also told the petitioner that the decision to accept or reject the offer was the petitioner's.

At the March 26, 2009, hearing, appellate counsel testified that he had been employed with the Shelby County Public Defender's Office since June 1990 and had worked in the appeals department since September 1996, during which time he had filed close to 300 appeals. He said he was not part of the petitioner's trial and did not assist trial counsel in his preparation of the motion for new trial but handled the direct appeal, reviewing the record from the trial and determining which issues to raise before the appellate court. When asked why he raised only two issues when trial counsel raised ten in his motion for new trial, appellate counsel explained that trial attorneys regularly include every conceivable issue in their motions for new trial, which appellate attorneys, upon review, reduce to the issues that have merit. On cross and redirect examination, appellate counsel agreed that he had raised before the appellate court only those issues he deemed to be the best in the case and that the issue of the victim's having appeared before the jury did not have any merit.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues,

the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The same principles apply in determining the effectiveness of both trial and appellate counsel. Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995). A petitioner alleging ineffective assistance of appellate counsel must show that (1) appellate counsel acted objectively unreasonable in failing to raise a particular issue on appeal and (2) absent counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful. See, e.g., Smith v. Robbins, 528 U.S. 259, 285 (2000); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Mayo v. Henderson, 13 F.3d 528, 533-34 (2d Cir. 1994). "If a claim of ineffective assistance of counsel is based on the failure to raise

-5-

a particular issue . . . then the reviewing court must determine the merits of the issue." Carpenter v. State, 126 S.W.3d 879, 887 (Tenn. 2004) (citing Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)). If an issue had no merit or was weak, then appellate counsel's performance will not have been deficient for failing to raise it. Id. Likewise, unless the omitted issue had some merit, the petitioner will have suffered no prejudice from appellate counsel's failure to raise the issue on appeal. Id. "[I]neffectiveness is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal, primarily because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." Kennath Henderson v. State, No. W2003-01545-CCA-R3-PD, 2005 WL 1541855, at *44 (Tenn. Crim. App. June 28, 2005), perm. to appeal denied (Tenn. Dec. 5, 2005).

On appeal, the petitioner contends that trial counsel's "host of omissions and failures," including his "half hearted investigation," his failure to call witnesses favorable to the petitioner, and the fact that he did not meet with the petitioner until June 2003, amounts to ineffective assistance of counsel. Trial counsel, however, testified that he met with the petitioner a number of times, including sometime around March 2003, shortly before the petitioner's first appointed counsel left the public defender's office. During those meetings, he shared discovery with the petitioner and discussed, *inter alia*, the State's evidence, trial defense strategy, his investigation, and the witnesses the petitioner wanted called in his defense. Trial counsel also offered a reasonable explanation for why he chose not to call the witnesses the petitioner wanted at trial, testifying that he believed their full testimony would hurt, rather than help, the petitioner's case. This court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Trial counsel's testimony, which was obviously accredited by the post-conviction court, demonstrates that he was fully prepared for the case and had valid reasons for his decision not to introduce the witnesses sought by the petitioner. We conclude, therefore, that the petitioner is not entitled to relief on the basis of this claim.

The petitioner next contends that appellate counsel was ineffective for failing to raise the issue of the victim's having been allowed to parade before the jury without testifying, which "blurred" "the lines between testimony and non-testimonial evidence" and violated his right of confrontation under the United States and Tennessee Constitutions. In denying relief on the basis of this claim, the post-conviction court made the following findings of facts and conclusions of law:

> During the hearing in this cause, appellate counsel indicated that he reviewed this issue, which was included in the motion for new trial, and

-6-

decided it had no merit. Petitioner has advanced no theory, explanation or law to show this court why appellate counsel was ineffective. In addition, [the] trial court found that a victim may stay in the courtroom if the prosecution elects to have the victim do so. See State v. Elkins, 83 S.W.3d 706, 713 (Tenn. 2002). Further, Petitioner has failed to show any prejudice from the trial court's ruling. Because the victim is permitted to stay in the courtroom, and Petitioner has failed to show why appellate counsel was ineffective, this Court finds that Petitioner has failed to carry his burden, and that appellate counsel was not deficient for failing to raise this issue on appeal.

The record supports the findings and conclusions of the post-conviction court. Appellate counsel does not have a constitutional obligation to raise every conceivable argument that might be made on appeal, Carpenter, 126 S.W.3d at 887 (citations omitted), and the determination of which issues to present on appeal is a matter generally addressed to the professional judgment and sound discretion of appellate counsel. Porterfield v. State, 897 S.W.2d 672, 678 (Tenn. 1995).

In his testimony, appellate counsel explained that he winnowed the ten issues in the motion for new trial down to the two that he thought stood the greatest chance of resulting in successful outcomes on appeal. He also stated his opinion that there was no merit to the issue of the victim's having been allowed in the courtroom. We agree. The trial record reveals that the victim's brief appearance occurred during the testimony of her mother, when the victim was brought into the courtroom for the mother to identify. In the bench conference that preceded her appearance, the trial court overruled the petitioner's objections after being informed that the victim was able to walk and that the only marks still visible were on her face. In so doing, the trial court noted that a photograph of the victim's injuries had just been admitted and that the victim had a right to be present in the courtroom if she wished. The petitioner cannot, thus, show either a deficiency in appellate counsel's performance based on his having chosen not to raise this issue on appeal, or that he was prejudiced as a result of that alleged deficiency. We conclude, therefore, that the petitioner is not entitled to relief on the basis of this claim.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE