# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 21, 2015

## STATE OF TENNESSEE v. DWIGHT R. WALTON

**Appeal from the Criminal Court for Sullivan County**
**No. S60658      Robert H. Montgomery, Jr., Judge**

_____

**No. E2014-02319-CCA-R3-CD – Filed September 21, 2015**

_____

Appellant, Dwight R. Walton, stands convicted of two counts of rape of a child, Class A felonies; three counts of aggravated sexual battery, Class B felonies; and two counts of soliciting sexual exploitation of a minor by electronic means, Class C felonies. He received an effective sentence of fifty years in the Tennessee Department of Correction. On appeal, he argues that the evidence was insufficient to support his convictions; that the trial court abused its sentencing discretion; that the trial court committed plain error by finding that appellant did not present a prima facie case of gender discrimination by the State in jury selection; and that the trial court committed plain error by denying appellant's request for the offense of child abuse to be charged to the jury as a lesser-included offense of rape of a child. Following our careful review, we conclude that one of appellant's convictions for aggravated sexual battery must be reversed for insufficient evidence and that the remaining two convictions for aggravated sexual battery must be merged. We affirm the remainder of appellant's convictions.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part; Reversed in Part and Remanded

ROGER A. PAGE, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

K. Justin Hutton (on appeal), Bristol, Tennessee; and G. Gene Scott, Jr., (at trial), Jonesborough, Tennessee, for the Appellant, Dwight R. Walton.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Barry Staubus, District Attorney General; and Teresa Ann Nelson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

Based on the accusations of appellant's seven-year-old stepdaughter, appellant was charged in a presentment with (Count 1) solicitation of sexual exploitation of a minor by electronic means; (Count 2) rape of a child; (Count 3) aggravated sexual battery; (Count 4) rape of a child; (Count 5) rape of a child; (Count 6) rape of a child; and (Count 7) solicitation of sexual exploitation of a minor by electronic means.

At appellant's April 2014 trial, United States Marshal Mike McCoy testified that he had previously been employed by the Bristol Police Department where he was responsible for investigating child abuse and sexual abuse cases. He was assigned to the instant case on November 14, 2008, and on that date, he observed as Amy Bachman of the Children's Advocacy Center interviewed the victim, a seven-year-old girl. After the interview, he spoke with the victim's mother, K.M.,[1] and asked for her consent to search the family's home in Bristol, Tennessee. The police took photographs of the home and collected a camera, a memory card for the camera, and couch cushions. Marshal McCoy said that he did not find any information or photographs relevant to his investigation on the camera or its memory card. Marshal McCoy testified that the family's home was divided into two residences with no inside access between the residences. Photographs of the house depict a single story residence with a basement apartment.

Bristol City Schools employee Scott Latham testified that classes commenced on August 11 for the 2008-2009 school year. Through Mr. Latham's testimony, the State submitted the victim's school record as evidence. The record indicated that on August 11, 2008, the victim was enrolled at Holston View Elementary School in the second grade. The record also contained a picture of the victim and the names and addresses of her parents.

The victim testified that she was born in June 2001 and was twelve years old at the time of trial. The victim recalled that in June 2008, she and her family moved to her grandmother's house in Bristol, Tennessee. Her mother was married to appellant at the time, and the family unit consisted of her mother, appellant, her brother, and herself. They lived in the downstairs unit of the house while her grandmother lived upstairs. The victim testified that she was eight years old when she moved and that the move occurred near her birthday. Her mother worked during the day, and appellant cared for the victim and her brother.

---

[1] It is the policy of this court to protect the identity of minor victims. In furtherance of this policy, we will refer to immediate family members of the victim by their initials.

The victim recalled that during this time period, appellant made her watch movies with him. She said that the movies featured men and women having sexual intercourse. The victim testified that she tried to run to another location in the house because she did not want to watch the movies but that appellant told her to sit next to him on the couch. She stated that he made her watch the movies more than twice. On one of those occasions, appellant placed one hand inside his pants and moved his hand "up and down." His other hand was either next to him or touching her.

The victim testified that one day while her mother was at work, appellant asked her to put on a pair of her mother's thong underwear. After she complied, he took photographs of her posing in the underwear. She said that she was not wearing anything other than the underwear. The victim explained that some of the poses that appellant asked her to do for the photographs were similar to what she had seen in the movies and that she knew what the poses were because of the movies.

The victim testified that the same day, appellant put his finger "[i]n [her] butt." She said that it caused her pain. Appellant stopped when she told him that it hurt. She testified that appellant said that if she told anyone, she would not see his side of the family again. The victim said that she would have been upset not to see Granny Rowland or Grand-Jack again.

The victim said that after school started, appellant made her watch movies with him again two or three times and that those movies showed naked men and women having sexual intercourse. She testified specifically that one time he put one hand inside his pants and moved it "[u]p and down" and that every time they watched such movies he put one hand inside his pants. He also had her pose in thong underwear again and took more photographs. She testified that he deleted the photographs after taking them. On the day that he took the photographs, he also kissed her "all over" her body and placed his tongue "[i]n [her] vagina."

The victim testified that one day after school, appellant told her to put his penis in her mouth. She said that they were in the living room, and she was sitting on the floor. She complied, and she recalled that "[s]tuff came out" of his penis that she then spit onto the couch. Appellant immediately cleaned the couch.

On cross-examination, the victim testified that her family had been living in Texas before moving to Tennessee in the middle of the summer of 2008. They lived in Texas because appellant was stationed at Fort Hood. The victim recalled that the movies appellant made her watch were on DVDs. She did not know where he stored the movies. The victim said that she and her younger brother were alone with appellant while her mother worked. Her younger brother was around two years old at the time and was

walking some and beginning to talk. Her brother would be "running around" during the incidents to which she had testified. The victim replied affirmatively when asked whether appellant had specifically mentioned Grand-Jack and Granny Rowland as people she would not be able to see if she disclosed the incidents. The victim stated that she believed they were appellant's grandparents. The victim testified that appellant's penis was hard when he put it in her mouth and that the substance coming out of his penis was white. She said that he was sitting in the middle of the couch during this incident and that she spit the white substance out toward the end of the couch but could not remember which side. The victim said that her grandmother was generally at home, in the upstairs portion of the house, during these incidents. The victim testified that the camera used by appellant was silver. She agreed that he deleted the pictures he took and stated that he deleted the pictures ten to fifteen minutes after taking them. The victim testified that she told her mother about the incidents sometime between Thanksgiving and Christmas. When asked why she told her mother about these things, she replied that her mother had asked her.

Tennessee Bureau of Investigation ("TBI") Special Agent Keith Proctor, the supervisor of TBI's DNA and serology section, was accepted by the court as an expert in DNA and serology analysis. He testified that he analyzed three couch cushions, labeled as right, middle, and left, for the presence of semen. Semen was located on the right cushion but not the other two. Agent Proctor visually confirmed that sperm cells were present on the right cushion. He then separated the sperm cells from the non-sperm cells. The DNA from the sperm cells matched appellant's DNA profile. The DNA from the non-sperm cells represented a mixture of genetic material. Agent Proctor testified that the major contributor of the mixture matched appellant's DNA and the minor contributor was consistent with the victim's DNA. He tested other locations of the cushion but found that the DNA was insufficient or degraded.

On cross-examination, Agent Proctor testified that, regarding the victim's DNA on the couch cushion, he could not identify from what bodily fluid the DNA originated. He also could not identify how old the DNA was. He agreed that a mixture of DNA is possible when fluids are deposited in the same place at different times.

Jessica Swiney testified that she had been friends with appellant since high school and friends with the victim's mother, K.M., since K.M. began dating appellant. At the end of 2008 or the beginning of 2009, she talked to K.M. and learned that K.M. and appellant had separated. As a result of that conversation, she spoke with appellant in person at his parents' house. Appellant told her

> that he made [the victim] lick his penis and that it was like a crack addiction. He didn't like doing it but he couldn't help it and that he wished he could get help but

he couldn't tell, he couldn't talk to his counselor about it because she was bound by law to tell, to report him.

Ms. Swiney testified that she asked appellant how he had prevented the victim from telling K.M. Appellant responded that he told the victim "that he loved her and that there would be nobody to pay the bills if he wasn't around."

On cross-examination, Ms. Swiney said that she had kept in contact with K.M. after the allegations were made against appellant. She agreed that although her conversation with appellant had occurred in January 2009, she did not give a statement to the police until April 2009.

On re-direct examination, Ms. Swiney testified that appellant told her he took pictures of the victim but erased the pictures before K.M. came home.

Following Ms. Swiney's testimony, the State rested its case-in-chief. Appellant moved for a judgment of acquittal, which the trial court granted in part by reducing the charge in count five from rape of a child to aggravated sexual battery.[2]

Appellant testified on his own behalf. He stated that he was married to the victim's mother from 2003 through 2008. He was honorably discharged from the military in July 2008, after which the family moved to Bristol from Texas. Appellant said that he was not working at the time and would care for the victim (his step-daughter) and the victim's younger brother (his son with K.M.) while K.M. was not home. He explained that K.M. left every morning and returned later in the day, sometimes as late as 10:00 or 11:00 p.m. He believed at the time that she was cleaning houses but later learned she had not been working. Appellant testified that the family lived in his mother-in-law's basement. Appellant asserted that he never molested the victim and that he never took photographs of her as she had described in her testimony. Appellant testified that his divorce from K.M. was granted in April 2012.

On cross-examination, appellant agreed that the family moved frequently from 2003 to 2008. He further agreed that after K.M. confronted him about allegations

---

[2] We recognize that a panel of this court has concluded that aggravated sexual battery is no longer a lesser-included offense of rape of a child; however, appellant has not raised that issue for our review. *See State v. John J. Ortega, Jr.*, No. M2014-01042-CCA-R3-CD, 2015 WL 1870095 (Tenn. Crim. App. Apr. 23, 2015). We note that appellant attempted to raise this issue by sending a letter to this court after the case had been docketed and assigned. However, this court will not consider issues raised pro se when an appellant is represented by counsel. *See State v. Lyons*, 29 S.W.3d 48, 51 n.2 (Tenn. Crim. App. 1999).

concerning the victim, he moved to his parents' house. Appellant denied owning pornographic movies, stating that K.M. would not allow such movies in their house.

On re-direct examination, appellant stated that his semen was found on the couch because he masturbated there when he was alone. On recross-examination, appellant agreed that he had masturbated on each cushion of the couch and stated that the TBI should have found semen on each one.

Margaret Walton, appellant's grandmother, testified that her husband, called Grand-Jack by the victim, died in August 2007 while appellant was living in Texas.

Following the close of proof and deliberations, the jury convicted appellant as follows: (Count 1) solicitation of sexual exploitation of a minor by electronic means; (Count 2) rape of a child; (Count 3) aggravated sexual battery; (Count 4) the lesser-included offense of aggravated sexual battery; (Count 5) aggravated sexual battery; (Count 6) rape of a child; and (Count 7) solicitation of sexual exploitation of a minor by electronic means.

The trial court held a sentencing hearing on July 11, 2014, at which several members of appellant's family testified as to his good character and asked for the court's leniency. The trial court found that four enhancement factors applied to appellant's sentence: (a) appellant had a previous history of criminal behavior based on his marijuana usage and convictions for public intoxication as reported in the presentence report, Tenn. Code Ann. § 40-35-114(1); (b) the victim was particularly vulnerable due to her age, *id.* § 40-35-114(4); (c) the offense was committed to gratify appellant's "desire for pleasure or excitement" based on his statements to Jessica Swiney, *id.* § 40-35-114(7); and (d) appellant abused a position of private trust as the victim's stepfather, *id.* § 40-35-114(14). The trial court considered in mitigation that appellant did not threaten or cause serious bodily injury and that he had been honorably discharged from the military. *See id.* § 40-35-113(1), (13). The trial court determined that the enhancement factors outweighed the mitigation factors and then set appellant's sentences as follows: (Count 1) solicitation of sexual exploitation of a minor by electronic means-six years; (Count 2) rape of a child, twenty-five years; (Count 3) aggravated sexual battery, twelve years; (Count 4) aggravated sexual battery, twelve years; (Count 5) aggravated sexual battery, twelve years; (Count 6) rape of a child, twenty-five years; and (Count 7) solicitation of sexual exploitation of a minor by electronic means, six years. Regarding the manner of service of appellant's sentence, the trial court found that Tennessee Code Annotated subsections 40-35-115(b)(2) and (5) applied to appellant's sentencing. The trial court imposed partially consecutive sentencing by ordering that counts one through three be served concurrently, that counts four through seven be served concurrently, and that the two groups of sentences be served consecutively, for an effective sentence of fifty years.

Appellant filed a motion for new trial, which was denied.  He filed a timely notice of appeal, and the matter is now properly before this court.

## II.  Analysis

### A.  Sufficiency (Appellant's Issue IV)

Appellant challenges the sufficiency of the evidence supporting his convictions.  The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011).  To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319.  This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both.  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'"  *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact.  *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).  This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence.  *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).  Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings.  *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

Appellant was convicted of two counts of soliciting sexual exploitation of a minor by electronic means, three counts of aggravated sexual battery, and two counts of rape of a child.  As pertinent to this case, Tennessee Code Annotated section 39-13-529(b)(2)

(2006) defines the offense of soliciting sexual exploitation of a minor by electronic means as a person over the age of eighteen displaying material containing sexual activity to a person under the age of eighteen when such display is for the purpose of sexually arousing the minor or the adult. Aggravated sexual battery is the "unlawful sexual contact with a victim by the defendant or the defendant by a victim" when the victim is less than thirteen years old. *Id.* § 39-13-504(a)(4). "Sexual contact" is defined as "the intentional touching of the victim's, the defendant's, or any other person's intimate parts . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). Rape of a child is defined as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." *Id.* § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." *Id.* § 39-13-501(7).

The State relied on the following conduct to support each corresponding count of the indictment:

Count One: Solicitation of sexual exploitation of a minor by electronic means: Appellant showed movies to the victim depicting naked men and women having sexual intercourse while both appellant and the victim were seated on the couch and while appellant put one hand in his pants and moved that hand "up and down." This conduct occurred prior to school starting.

Count Two: Rape of a Child. Appellant placed his finger inside the victim's anus.

Count Three: Aggravated Sexual Battery. Appellant rubbed the victim's bottom.

Count Four: Rape of a Child (convicted of Aggravated Sexual Battery). Appellant penetrated the victim's vagina with his tongue.

Count Five: Aggravated Sexual Battery. Appellant kissed the victim all over her body.

Count Six: Rape of a Child. Appellant penetrated the victim's mouth with his penis.

Count Seven: Solicitation of sexual exploitation of a minor by electronic means. Appellant showed movies to the victim depicting naked men and women having sexual intercourse while both appellant and the victim were seated on the couch and while

appellant put one hand in his pants and moved that hand "[u]p and down." This conduct occurred after school had started.

Viewed in the light most favorable to the State, the evidence at trial supports appellant's convictions for each count except Count Three. The victim testified that both before and after school started, appellant showed her movies of men and women having sexual intercourse, and the jury could justifiably infer from her testimony about his hand being inside of his pants moving "[u]p and down" that he was masturbating while watching the movies. The State also established the relative ages of the victim and appellant. Thus, the State sufficiently proved the elements of solicitation of sexual exploitation of a minor by electronic means in counts one and seven. The State also sufficiently proved the elements of rape of a child through the victim's testimony that appellant penetrated her anus with his finger and penetrated her mouth with his penis; thus, we affirm counts two and six. Regarding counts four, for which the jury convicted appellant of the lesser-included offense of aggravated sexual battery, and count five, for which the jury convicted appellant of the charged offense of aggravated sexual battery, the victim's testimony that appellant kissed her all over her body, including her vagina, in conjunction with the rest of the victim's testimony, is sufficient to establish that appellant intentionally touched the victim's intimate parts and for the jury to infer that the intentional touching was for sexual gratification. However, because the two counts represent convictions for the same offense committed during the same incident, the two counts must be merged. *See State v. Smith*, 436 S.W.3d 751, 768 (Tenn. 2014) (discussing unit-of-prosecution double jeopardy claims).

Finally, for count three, aggravated sexual battery, the State submitted that appellant had "rubbed" the victim's bottom, but the victim testified specifically that during that incident, appellant did not touch her other than placing his finger in her anus, conduct for which appellant was convicted of rape of a child. Therefore, there was no evidence presented to support appellant's conviction for aggravated sexual battery in count three, and that charge must be dismissed.

### B. *Batson* Claim (Appellant's Issue II)

Appellant asks this court to review as plain error whether the trial court erred by denying his claim under *Batson v. Kentucky* that the State used its peremptory challenges to strike men from the jury solely on the basis of gender. Because appellant failed to include this issue in his motion for new trial, it is waived. Tenn. R. App. P. 3(e). Therefore, appellant must establish the necessity for plain error review.

For review as an issue of plain error, appellant must first meet the following requirements:

(a) the record must clearly establish what occurred in the trial court;

(b) a clear and unequivocal rule of law must have been breached;

(c) a substantial right of the accused must have been adversely affected;

(d) the accused did not waive the issue for tactical reasons; and

(e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). To rise to the level of "plain error," an error "'must [have been] of such a great magnitude that it probably changed the outcome of the trial.'" *Adkisson*, 899 S.W.2d at 642 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)). All five factors must be established by the record before a court will find plain error. *Smith*, 24 S.W.3d at 282. Complete consideration of all the factors is not necessary when clearly at least one of the factors cannot be established by the record.

In this case, appellant cannot establish that a clear and unequivocal rule of law was breached. In *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), the United States Supreme Court held that "the Equal Protection Clause [of the United States Constitution] forbids the prosecutor to challenge potential jurors solely on account of their race." "In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the United States Supreme Court held that 'gender, like race, is an unconstitutional proxy for juror competence and impartiality.'" *State v. Hugueley*, 185 S.W.3d 356, 376 (Tenn. 2006). The same three-prong analysis is used for claims based on race and gender. *Id.* Under this three-pronged approach, "the defendant must establish a *prima facie* case of purposeful discrimination against a prospective juror." *Id.* at 368. To do so, a defendant may rest "'solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial.'" *Id.* (quoting *Batson*, 476 U.S. at 96). For the second prong of the analysis, if a defendant establishes "a *prima facie* showing of purposeful discrimination," only then must the State provide a neutral basis for the challenge. *Id.* (citing *Batson*, 476 U.S. at 97). Finally, if the State provides a race-neutral reason for the challenge, "the trial court must then determine, from all of the circumstances, whether the defendant has established purposeful discrimination." *Id.* (citing *Batson*, 476 U.S. at 98).

In this case, appellant objected after the State used its first four preemptory challenges to exclude men from the jury. The State responded that it based its challenges on the responses of the potential jurors during general questioning of the venire. The trial court accepted the State's reason and determined that appellant had not established purposeful discrimination, noting that seven of the jurors on the panel at that time were

men. Based on this record, we cannot conclude that appellant established the necessary criteria for plain error review.

## C. Jury Instruction (Appellant's Issue III)

Appellant contends that it was plain error for the trial court to deny his request for a jury instruction for child abuse as a lesser-included offense of rape of a child. However, again, he has not established the necessity for plain error review. Child abuse may be a lesser-included offense of rape of a child when the evidence presented at trial is sufficient to support a conviction for child abuse. *State v. Elkins*, 83 S.W.3d 706, 711 (Tenn. 2002). Tennessee Code Annotated section 39-15-401(e) (2006) states that child abuse "may be a lesser included offense of any kind of . . . sexual offense, if the victim is a child and the evidence supports a charge under this section." The trial court in this case ruled that the evidence did not support a charge of child abuse or neglect. The record is subject to interpretation; thus, the trial court did not breach a *clear and unequivocal* rule of law.

## D. Sentencing (Appellant's Issue I)

Appellant contends that the trial court erred by sentencing him to the maximum sentence length for his Class B and C felony convictions and by ordering partially consecutive sentences. Appellant does not challenge the length of his sentences for his Class A felony convictions. Specifically, appellant contends that the trial court misapplied some enhancement factors, failed to properly weigh the enhancement and mitigating factors, and misapplied the factors relative to consecutive sentencing. The State responds that the trial court did not abuse its discretion in sentencing appellant.

### 1. Sentence Length

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Appellant, as a Range I offender, was subject to a sentence of three to six years for the Class C felonies and eight to twelve years for the Class B felonies. *See* Tenn. Code Ann. § 40-35-112(a) (2006). The statute for rape of a child set the minimum term for a conviction of that offense at twenty-five years. *Id.* § 39-13-522(b)(2)(A) (Supp. 2007). The trial court found that four enhancement factors applied to appellant's sentence: (a) appellant had a previous history of criminal behavior based on his marijuana usage and

convictions for public intoxication as reported in the presentence report, Tenn. Code Ann. § 40-35-114(1); (b) the victim was particularly vulnerable due to her age, *id.* § 40-35-114(4); (c) the offense was committed to gratify appellant's "desire for pleasure or excitement," *id.* § 40-35-114(7); and (d) appellant abused a position of private trust, *id.* § 40-35-114(14). The trial court considered in mitigation that appellant did not threaten or cause serious bodily injury and that he had been honorably discharged from the military. *See id.* § 40-35-113(1), (13). The trial court determined that the enhancement factors outweighed the mitigation factors and set appellant's sentences at six years for each Class C felony, twelve years for each Class B felony, and twenty-five years for each Class A felony.

Appellant takes exception to the trial court's application of the four enhancement factors coupled with the trial court's failure to accord each factor a relative weight. To begin, we note that while a trial court has great discretion in finding enhancement factors, it cannot apply enhancement factors that are essential elements of the convictions. *See id.* § 40-35-114. Our supreme court has stated that enhancement factor seven, that "[t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement," cannot apply to offenses where sexual arousal or gratification is an element of the offense. *State v. Kissinger*, 922 S.W.2d 482, 489-90 (Tenn. 1996). Therefore, factor seven cannot apply to appellant's convictions for aggravated sexual battery or soliciting sexual exploitation of a minor by electronic means.

Appellant contends that the trial court also misapplied factor four, that the victim was particularly vulnerable due to her age, because age was an essential element for each of appellant's convictions. The *Kissinger* court ruled that enhancement factor four is allowable even when age is an element of the offense as long as some evidence exists that the victim's age actually made the victim more vulnerable "because of an inability to resist, a difficulty in calling for help, or a difficulty in testifying against the perpetrator." *Id.* at 487 (citing *State v. Hayes*, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995)). The trial court found that the victim's age made it more difficult for her to resist appellant and get help, as shown by appellant's ease in preventing her from leaving the room when she tried to get away from him. Thus, we conclude that the trial court properly applied enhancement factor four.

In addition, we further conclude that the evidence presented supports the trial court's application of enhancement factors one and fourteen because appellant reported frequent marijuana usage, had misdemeanor convictions for public intoxication, and was the victim's stepfather and, from both his and the victim's testimony, her primary caregiver while her mother worked. Appellant argues that the trial court also applied an enhancement factor that was not listed in the statute based on the trial court's comments about the length of time in which the offenses continued, but a close reading of the transcript reveals that the trial court's comments were its justification for not applying

mitigating factor eleven, Tenn. Code Ann. § 40-35-113(11), which considers whether a defendant evinced a sustained intent to violate the law.

Ultimately, appellant has not shown that the trial court abused its discretion in setting the length of his sentences because the trial court applied four enhancement factors, only one of which was misapplied, and two mitigating factors, finding that the enhancement factors outweighed the mitigating factors. Misapplication of an enhancement factor does not remove the presumption of reasonableness accorded to the trial court's sentencing. *Bise*, 380 S.W.3d at 709. Appellant's sentences were within the range set by the legislature, albeit at the top of the range for the Class B and C felonies, and were in compliance with the purposes and principles of the sentencing act. *Id.* at 709-10. Therefore, we affirm the length of appellant's sentences.

## 2. Consecutive Sentencing

Regarding the alignment of his sentences, appellant argues that the trial court improperly ordered partially consecutive sentencing. The record shows that the trial court found that Tennessee Code Annotated sections 40-35-115(b)(2) and (5) applied to appellant's sentencing. On appeal, appellant only challenges the trial court's application of section -115(b)(5).

Prior to 2013, on appellate review of sentence alignment issues, courts employed the abuse of discretion standard of review. *See State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999). Our supreme court has since extended the standard of review enunciated in *State v. Bise*, abuse of discretion with a presumption of reasonableness, to consecutive sentencing determinations. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013); *Bise*, 380 S.W.3d 682, 707 (Tenn. 2012) (modifying standard of review of within-range sentences to abuse of discretion with a presumption of reasonableness); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying abuse of discretion with a presumption of reasonableness to review of alternative sentencing determinations by the trial court). Thus, the presumption of reasonableness gives "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b) . . . ." *Pollard*, 432 S.W.3d at 861.

The procedure used by the trial courts in deciding sentence alignment is governed by Tennessee Code Annotated section 40-35-115, which lists the factors that are relevant to a trial court's sentencing decision. Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1). The length of the resulting consecutive sentence must be "no greater than that deserved for the offense committed." *Id.* § 40-35-103(2). The court may order consecutive

sentences if it finds by a preponderance of the evidence that one or more of the following seven statutory criteria exists:

(1)     The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2)     The defendant is an offender whose record of criminal activity is extensive;

(3)     The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)     The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5)     The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)     The defendant is sentenced for an offense committed while on probation; or

(7)     The defendant is sentenced for criminal contempt.

The *Pollard* court reiterated that "[a]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.*

The trial court found that consecutive sentencing factors two and five applied to appellant's sentencing and ordered that appellant's two rape of a child sentences be served consecutively. The court ordered that the other offenses be served concurrently

-15-

with one or the other rape of a child convictions. On appeal, appellant only challenges the application of factor five. The trial court articulated its reasoning for the application of both factors, noting appellant's long and frequent use of marijuana, the sheer number of times that the victim was subject to offenses by appellant, appellant's relationship to the victim as her stepfather, the varied manner of his violations of her, and the mental damage that the trial court observed during the victim's testimony. Our review of the record supports the trial court's application of both consecutive sentencing factors, and we affirm the trial court's imposition of partially consecutive sentences.

## CONCLUSION

Based on the record, the applicable legal authority, and the briefs of the parties, we affirm appellant's convictions with the exception of his aggravated sexual battery conviction in count three, which must be dismissed for insufficient evidence. We further order that upon remand, the trial court effect the merger of the aggravated sexual battery convictions in counts four and five. After these modifications, appellant's effective sentence remains fifty years.

_____<br>
ROGER A. PAGE, JUDGE